OPINION
{¶ 1} Defendant-Appellant, Dennis Rubel, appeals the judgment of the Henry County Court of Common Pleas convicting him of rape and robbery. On appeal, Rubel argues that he was denied effective assistance of counsel. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In October 2005, the Henry County Grand Jury indicted Rubel for one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, and one count of robbery in violation of R.C.2911.02(A)(2), a felony of the second degree. The indictment arose from an incident whereby Rubel compelled a victim to engage in sexual conduct and then took her purse and cell phone. Subsequently, Rubel entered a plea of not guilty to both counts.
 {¶ 3} In May 2006, the case proceeded to jury trial, during which the following testimony was heard.
 {¶ 4} The victim testified that, on August 16, 2005, she was working as a bartender at Jack's Log Cabin, a bar in Liberty Center; that Rubel came into the bar around 1:00 a.m. and they made "small talk" while she cleaned up the bar; that, at some point, she did not see Rubel anymore, so she assumed he left, closed and locked the entrance door, and resumed cleaning; that she was then startled because she saw Rubel standing in front of her; that he began touching her legs *Page 3 
and she pushed him away; that she unlocked the entrance door and held it open, indicating that he needed to leave; that he began grabbing her and she pushed him to try and get away from him; that he grabbed her arm and put his finger into her vagina; that he told her not to "fight him" and threatened to kill her if she did not stop struggling; that he removed her shirt during the struggle; that she eventually broke away from him, ran to the women's restroom, barricaded the door with her body, and called 9-1-1; that Rubel pounded on the door trying to get into the restroom while she was on the phone with 9-1-1; that she did not leave the restroom until the 9-1-1 dispatcher informed her a police officer had arrived; that, as a result of the struggle, she sustained bruising to her arms, calf, and thighs; and, that she never attempted to kiss Rubel or consented to sexual conduct with him.
 {¶ 5} Further, the victim testified that Rubel was not carrying a purse or bag when he entered the bar; that she placed her purse and cell phone on the bar while cleaning after she believed Rubel had departed; that her purse contained $420; that her purse and cell phone disappeared while she was barricaded in the restroom; and, that her purse was not missing any items or money when the police returned it to her.
 {¶ 6} Deputy Sean Walker of the Henry County Sherriff s Office testified that, on August 16, 2005, at approximately 2:00 a.m., he received a dispatch to the Log Cabin bar because "they had a female caller on 9-1-1 stating that someone *Page 4 
had just attempted to sexually assault her" (trial tr., vol. I, p. 103); that, when he arrived at the bar, he could hear the victim in the restroom talking on the phone to the 9-1-1 dispatcher; that, when the victim came out of the restroom, she was not wearing a shirt and was "very visibly upset, crying, [and] panicky" (trial tr., vol. I., p. 105); that there were clear signs of a struggle in at least one area of the bar; that the victim informed him that her purse and cell phone were missing and gave him a description of the alleged offender; that she did not tell him that she had been sexually assaulted and he did not ask; and, that he located her cell phone in the road approximately one quarter of a mile from the bar and her purse one quarter of a mile from the cell phone.
 {¶ 7} Deputy Brian Bossert of the Henry County Sheriff's Office testified that, on August 16, 2005, he received a dispatch to the Log Cabin bar because an attack had taken place; that, when he arrived, the victim was crying and appeared "frantic, scared, * * * [and] shaken" (trial tr., vol. I, p. 127); that there were signs of a "tussle" in one area of the bar; and, that, approximately twenty-four hours later, he took pictures of bruises on the victim's arms, calf, upper leg, and elbow.
 {¶ 8} Lieutenant Richard Alvord of the Henry County Sheriffs Office testified that he investigated the incident at the Log Cabin bar; that he received an anonymous phone call stating that Rubel was the offender; that the victim identified Rubel as the offender from a photo array; that Rubel stated to him that *Page 5 
he had been at the bar and the victim had "come onto him" and then "flipped out on him" (trial tr., vol. II, p. 8); and, that Rubel told him that he grabbed the victim's purse, mistaking it for his own, and threw it into the road when he realized that his own purse was attached to his bicycle.
 {¶ 9} Rubel testified that on August 16, 2005, he consumed alcohol and then rode a bicycle to the Log Cabin bar; that he entered the bar carrying his purse-like bag, ordered a beer, and spoke with the victim; that she asked him to go outside while she "cashed out" the register, telling him he could come back inside when she was finished; that he tied his purse to his bicycle handlebars and waited outside until she told him to come back inside; that she began dancing around, "rubbing on" him, and kissing his neck; that he leaned over to try and kiss her and "bam, she just blew up" (trial tr., vol. II, p. 23); that he never put his finger into her vagina or pulled her shirt off; that she attacked him, jumped on him, and tried to "pound" him; that he fell on top of her during the struggle; that he grabbed a purse that he believed was his from the counter and ran outside; that he did not take a cell phone from the bar; and, that, while he was riding away from the bar on his bicycle, he realized that his own purse was tied to the handlebars, so he threw the other purse into a cornfield. *Page 6 
 {¶ 10} Subsequently, the jury convicted Rubel of both the rape count and the robbery count. Thereafter, Rubel moved for a new trial and for a new trial instanter.
 {¶ 11} In May 2007, the trial court overruled both of Rubel's motions.
 {¶ 12} In August 2007, the trial court found Rubel to be a sexually oriented offender and sentenced him to a three-year prison term on the rape conviction and to a two-year prison term on the robbery conviction, to be served concurrently for an aggregate of three years.
 {¶ 13} It is from this judgment that Rubel appeals, presenting the following assignment of error for our review.
 MR. RUBEL WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS, AND A FAIR TRIAL.
 {¶ 14} In his sole assignment of error, Rubel contends that his trial counsel was ineffective and that he was prejudiced as a result. Specifically, Rubel argues that his trial counsel was ineffective for failure to investigate potential inconsistencies between the victim's testimony and the potential testimony of the 9-1-1 dispatcher or recording of the phone call.[1] Rubel also argues that the record demonstrates the trial court had qualms about the effectiveness of trial counsel *Page 7 
because it sentenced Rubel to minimum, concurrent sentences, took several months to deny his motion for a new trial, and granted him an appellate bond. Additionally, at oral argument, Rubel argued that failure to preserve audio evidence is per se ineffective assistance of counsel, even absent a showing of prejudice. We disagree.
 {¶ 15} A claim of ineffective assistance of counsel requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To show that a defendant has been prejudiced by trial counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy (1992),63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by State v. Smith, 80 Ohio St.3d 89, 103,1997-Ohio-355.
 {¶ 16} Furthermore, the reviewing court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone (1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or *Page 8 
legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting Smith v. Murray (1986), 477 U.S. 527. Finally, tactical or strategic decisions, even those which prove unsuccessful, do not substantiate a claim of ineffective assistance of counsel. State v. Garrett (1991), 76 Ohio App.3d 57, 61, abrogated on other grounds by State v. Delmonico, 11th Dist. No. 2003-A-0022,2005-Ohio-2902.
 {¶ 17} Here, Rubel contends that trial counsel failed to investigate possible inconsistencies between the victim's testimony and the potential testimony of the 9-1-1 dispatcher or recording of the phone call. Rubel claims that, because the victim testified that he was banging on the door while she spoke to the dispatcher, the dispatcher's testimony or a recording of the call could have been exculpatory towards him if no banging was audible. Thus, Rubel contends that trial counsel was ineffective for failing to subpoena the dispatcher and for failing to investigate or preserve the recording.
 {¶ 18} This court has previously found that "[t]he failure to subpoena witnesses for a trial is not a substantial violation of defense counsel's essential duty to his client in the absence of any showing that the testimony of any one or more of the witnesses would have assisted the defense[.] * * *" State v. Barker (1988), 3d Dist. No. 16-87-5, 1988 WL 126750, citing State v. Reese (1982),8 Ohio App.3d 202. See, also, State v. Gales (2000), 9th Dist. No. 00CA007541, *Page 9 2000 WL 1729454; Middletown v. Allen (1989), 63 Ohio App.3d 443, 448. Additionally, regarding failure to preserve 9-1-1 recordings, the Sixth Appellate District has found that, where a defendant has produced no evidence that a recording would have been exculpatory, he has not demonstrated prejudice. State v. Haskins, 6th Dist. No. E-01-16, 2003-Ohio-70, ¶ 59.
 {¶ 19} Here, Rubel has not demonstrated that the 9-1-1 dispatcher's potential testimony or the recording would have assisted his defense or presented a reasonable probability that the outcome of his trial would have been different. Rubel can only speculate that pounding on the restroom door would have been audible to the 9-1-1 dispatcher and perceptible in the recording and that a lack of pounding would have been exculpatory towards him. Furthermore, trial counsel may have chosen not to subpoena the 9-1-1 dispatcher or preserve the recording because this evidence would not have been favorable to Rubel; thus, the decision may have been sound trial strategy. See Gales, supra. Therefore, Rubel has failed to show that his counsel was ineffective for failure to subpoena the 9-1-1 dispatcher or preserve the recording.
 {¶ 20} Rubel next argues that ineffective assistance of counsel is apparent from the record because the trial court imposed minimum, concurrent sentences, deliberated for several months before denying his request for a new trial, and granted him an appellate bond. However, we find that these facts are irrelevant *Page 10 
towards an ineffective assistance claim. A trial court may impose any prison sentence within the statutory guidelines, State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, ¶ 100, and imposing the minimum sentence or concurrent sentences does not imply that the trial court had reservations concerning the effectiveness of trial counsel. Further, the length of time a trial court takes in deliberating over whether to grant a new trial or its decision to grant an appellate bond suggests nothing about the effectiveness of trial counsel, and Rubel cites no authority supporting this proposition.
 {¶ 21} Finally, Rubel contends that trial counsel's failure to secure or request preservation of audio evidence constitutes per se ineffective assistance of counsel, even absent a showing of prejudice. However, it is well-established that an ineffective assistance claim requires a showing of prejudice. See Bradley, 42 Ohio St.3d at paragraph two of the syllabus; State v. Antony, 3d Dist. No. 6-07-01, 2007-Ohio-5480. Accordingly, we decline to adopt Rubel's proposition that failure to preserve audio evidence is per se ineffective assistance of counsel.
 {¶ 22} Accordingly, we overrule Rubel's assignment of error.
 {¶ 23} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and PRESTON, J., concur.
[1] We note that it is undisputed that any 9-1-1 recording made of the victim's phone call was erased prior to this appeal. *Page 1