[Cite as *State v. Wisby*, 2013-Ohio-1307.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2012-06-049 |
| | : | O P I N I O N |
| - vs - | | 4/1/2013 |
| | : | |
| CHRISTOPHER S. WISBY, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2010CRB5320


D. Vincent Faris, Clermont County Prosecuting Attorney, David H. Hoffmann, 123 North Third Street, Batavia, Ohio 45103, for plaintiff-appellee

The Farrish Law Firm, Michaela M. Stagnaro, 810 Sycamore Street, 6th Floor, Cincinnati, Ohio 45202, for defendant-appellant


**PIPER, J.**

{¶ 1}  Defendant-appellant, Christopher Wisby, appeals his conviction and sentence in the Clermont County Municipal Court for violating a protection order.

{¶ 2}  Wisby had a relationship with Danielle Mullis that lasted five years, and produced two children.  However, the couple separated and Mullis sought and obtained multiple protection orders against Wisby.  On September 15, 2010, the court issued a

protection order whereby Wisby was prohibited from contacting Mullis or coming within 500 feet of her. Wisby attended the September 15, 2010 hearing, and was personally served with the order the next day by a deputy who read Wisby the terms contained in the order.

{¶ 3} On September 21, 2010, Wisby made contact with Mullis as she was leaving the Regency Beauty Institute where she was taking classes. Wisby, who was the front-seat passenger in a gold van driven by his grandmother, approached Mullis as she was getting into her Mother's car, and yelled for Mullis to "just give me the kids, just give me the kids." After a minute, Wisby's grandmother drove away.

{¶ 4} Wisby was charged with violating the protection order and the matter proceeded to trial. Wisby requested a jury trial, but the trial court denied such after finding that Wisby failed to properly file a jury request. The trial court held a bench trial, and found Wisby guilty. The trial court sentenced Wisby to three years of community control, 40 hours of community service, a $100 fine, and one day in jail, with credit for time served. Wisby appealed his conviction and sentence to this court, arguing that he had been denied his right to a jury trial. This court reversed Wisby's conviction and sentence, finding that he had been denied his right to a jury trial. *State v. Wisby*, 12th Dist. No. CA2011-05-044, 2012-Ohio-227.

{¶ 5} Once the case was remanded, Wisby had a trial by jury, which was presided over by a different judge than the one who held the bench trial and sentenced Wisby the first time. The jury found Wisby guilty, and the second judge sentenced Wisby to 180 days in jail with 150 days suspended, four years of community control, and a $250 fine. Wisby now appeals his conviction and sentence, raising the following assignments of error:

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION.

- 2 -

{¶ 8} Wisby argues in his first assignment of error that his conviction is against the manifest weight of the evidence and is not supported by sufficient evidence.

{¶ 9} Manifest weight and sufficiency of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins,* 78 Ohio St.3d 380, 386, (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson,* 12th Dist. No. CA2006-01-007, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

{¶ 10} While the test for sufficiency requires an appellate court to determine whether the state has met its burden of production at trial, a manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *Wilson*, 2007-Ohio-2298.

> In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Cummings*, 12th Dist. No. 2006-09-224, 2007-Ohio-4970, ¶ 12.

{¶ 11} While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a conviction due to

the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *Thompkins*, 78 Ohio St.3d at 387.

{¶ 12} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Wilson*, 2007-Ohio-2298 at ¶ 35, citing *State v. Lombardi*, 9th Dist. No. 22435, 2005-Ohio-4942, fn. 4.

{¶ 13} Wisby was convicted of violating a protection order in violation of R.C. 2919.27(A)(1), which prohibits a person from recklessly violating the terms of any issued protection order. According to R.C. 2901.22(C),

> a person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶ 14} After reviewing the record, Wisby's conviction is not against the manifest weight of the evidence, and is otherwise supported by sufficient evidence. The jury heard evidence that a protection order was issued, that Wisby was present at the September 15, 2010 hearing where the court granted the protection order, and that he was personally served with the order and made aware of its terms. According to the terms of the protection order, Wisby was prohibited from having contact with Mullis and could not come within 500 feet of her. The jury heard evidence that Wisby made contact with Mullis when he demanded that she give him their children, during which time Wisby was within 500 feet of Mullis. Based on this evidence, and when viewed in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

- 4 -

doubt.

**{¶ 15}** Wisby first argues that his conviction was against the manifest weight of the evidence and not supported by sufficient evidence because he was not aware of the terms of the protection order. The state called Deputy Tony DuFresne, who testified that he was on duty on September 16, 2010 and served Wisby with the restraining order that prohibited Wisby from being in contact with Mullis. Deputy DuFresne testified that he explained the terms of the protection order to Wisby, and that he read to Wisby the various provisions contained therein.

**{¶ 16}** Wisby testified at trial, and denied that Deputy DuFresne ever served him with the protection order. Instead, Wisby asserted at trial that he and Mullis appeared in court on September 7, 2010, at which time a previous protection order Mullis filed against him was dismissed. Wisby also testified that when he went to the court on September 16, 2010 to pick up the paperwork dismissing the order, he was handed paperwork by the deputy, which he assumed was the dismissal. However, Wisby denied that the deputy ever told him that the paperwork actually handed to him on September 16, 2010 was the new civil protection order granted the previous day. Wisby also testified that while he may have been at the hearing wherein the court granted the protection order on September 15, 2010, he was confused because of having appeared in court so many times.

**{¶ 17}** While Wisby offered testimony contrary to that offered by Deputy DuFresne, the jury was free to disregard Wisby's testimony, as the jury is in the best position to judge the credibility of the witnesses and the weight to be given their testimony. By virtue of the jury's verdict, it found Deputy DuFresne's testimony credible, and did not believe Wisby's testimony that he was unaware of the civil protection order or its terms. We do not find that the jury's decision was against the manifest weight of the evidence.

**{¶ 18}** Wisby next argues that even if he was served with the protection order, the

state failed to present evidence that he recklessly violated the terms of the order. The state presented the testimony of Mullis and one of her classmates, Katie Dyer. Mullis testified that as she was leaving her class at the Regency Beauty Institute, she entered her mother's car, which her mother permitted her to borrow. Once she was in the car, she saw the van belonging to Wisby's grandmother pull up beside her, and Wisby began yelling at her to give him their children. Mullis testified that she stated, "you need to leave, you need to get out of here." Mullis' testimony was corroborated by Katie Dyer, who testified that she saw a gold van parked near Mullis and that she could hear yelling coming from the van. Dyer also made an in-court identification of Wisby as the man she saw as a passenger in the van on the night of the incident.

{¶ 19} Wisby testified that he, his grandmother, and grandfather were driving to see a movie when they saw the car belonging to Mullis' mother. Wisby stated that he did not know that Mullis attended classes at Regency Beauty Institute, and that he only wanted to inquire from Mullis' mother about his children. Wisby and his grandmother both testified that once they determined that Mullis was in her mother's car, they drove away without communicating with Mullis, and without demanding that she give him the children. While testimony from Wisby and his grandmother contradicted that of Mullis and Dyer, the jury did not find the testimony from Wisby or his grandmother credible. Again, as the jury was in the best position to gauge the credibility of the witnesses, we do not find that the conviction was against the manifest weight of the evidence or otherwise unsupported by sufficient evidence.

{¶ 20} Having found that Wisby's conviction is not against the manifest weight of the evidence and is supported by sufficient evidence, his first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY SENTENCING APPELLANT.

{¶ 23} Wisby argues in his second assignment of error that the trial court improperly sentenced him because the sentence imposed after his jury trial was more severe than that which was imposed after the bench trial.

{¶ 24} Wisby's argument relies upon *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072 (1969), wherein the United States Supreme Court explained that due process rights are violated should vindictiveness play any role in a defendant's resentence following a remand. While Wisby argues that his second sentence was harsher and therefore vindictive, a presumption of vindictiveness arises only when circumstances establish a "reasonable likelihood" that an increased sentence is the product of vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201 (1989). "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Id.,* citing *Wasman v. United States*, 468 U.S. 559, 569, 104 S.Ct. 3217 (1984).

{¶ 25} There is no presumption of vindictiveness when the trial court that imposes the second sentence is different from the original sentencing judge. *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976 (1986); *see also State v. Kortum*, 12th Dist. No. CA2001-04-034, 2002 WL 237370 (Feb.19, 2002). Instead, "it may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty." *McCullough* at 140, quoting *Colten v. Kentucky,* 407 U.S. 104, 117, 92 S.Ct. 1953 (1972).

{¶ 26} After a remand and jury trial, the second judge sentenced Wisby to jail time, an additional year of community control, and a larger fine. However, because the sentencing court was not the same one that presided over the bench trial and sentenced Wisby to a more lenient sentence, there is no presumption of vindictiveness. Therefore, Wisby must demonstrate vindictiveness from the record. In order to do so, Wisby argues that the first trial

court had a presentence investigation report, and did not feel the need to order jail time. Wisby argues that no facts changed from the time of the first trial to the second, so that the only reason for ordering a harsher sentence was vindictiveness. We disagree.

{¶ 27} Wisby chose to testify at the jury trial and was subject to cross-examination, and therefore made his credibility an issue at trial. Wisby indicated that neither Mullis nor Dyer were telling the truth regarding what occurred on the night of the incident. Wisby also testified under oath that Deputy DuFresne was essentially lying when he testified to serving Wisby with the protection order and that he had explained all of the terms to Wisby. However, Wisby's testimony was not deemed credible by the trier of fact. While defendants have the right to defend themselves and to challenge the state's witnesses, a defendant does not have the right to misrepresent the truth while under oath. The trial court noted that Wisby's testimony demonstrated that Wisby was "not using [his] head and figuring these things out" and was rather "mostly guided by [his] emotions." The trial court presided over the jury trial and observed Wisby and his attempt to discredit the victim and deputy, and was within its discretion when taking Wisby's lack of veracity and general approach during the trial into account when sentencing him.

{¶ 28} Moreover, immediately before sentencing, the trial court permitted Wisby to address the court. Wisby tried to offer mitigating evidence as to why he should not be subject to a jail sentence. However, the trial court was free to give limited weight to Wisby's attempts at mitigation. The state, after suggesting a 30-day sentence, also informed the court that Wisby had violated a different temporary protection order involving the same victim. The trial court also heard from Mullis, and she indicated that she and Wisby had been to court multiple times, and that regardless of the orders in place to protect her, Wisby continually disregarded the orders. Mullis stated that Wisby "feels that he makes his own rules. He hasn't spent any time in jail for any of his actions whatsoever regarding the children

or violation of protection order. He was asked to leave me alone and, clearly, he cannot do that." The trial court was within its discretion to consider the fact that Wisby continued to violate court orders by contacting Mullis, and a harsher sentence was not the result of vindictiveness.

{¶ 29} Wisby also argues that his sentence should be reversed because the trial court failed to consider the purposes and principles of misdemeanor sentencing when it imposed the sentence.

{¶ 30} Pursuant to R.C. 2929.21 and 2929.22, trial courts have broad discretion when determining what sentence is appropriate for each given misdemeanor case. When determining the appropriate sentence, the trial court must be guided by the purposes of misdemeanor sentencing which are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). The trial court must also consider the factors listed in R.C. 2929.22(B)(1), including the nature and circumstances of the offense, and may consider any other factors that are relevant to achieving the purposes and principles of misdemeanor sentencing. R.C. 2929.22(B)(2). "Although it is preferable that the trial court affirmatively state on the record that it has considered the criteria set forth in R.C. 2929.22, the statute does not mandate that the record state that the trial court considered the applicable statutory factors." *State v. Collins*, 3rd Dist. Nos. 1-05-15, 1-05-21, 2005-Ohio-4755, ¶ 12. A trial court is presumed to have considered the statutory factors when the sentence is "within the statutory limits and there is no affirmative showing that the trial court failed to do so." *Id.*

{¶ 31} We review a trial court's sentence on a misdemeanor violation under an abuse of discretion standard. *State v. Lunsford*, 12th Dist. No. CA2010-10-021, 2011-Ohio-6529, ¶ 25. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Barnes,* 94 Ohio St.3d

21, 23 (2002).

**{¶ 32}** According to the trial court's judgment entry, it "considered the principles and purposes of sentencing under Section 2929.21 of the ORC, and the sentencing factors of Section 2929.22 of the ORC * * *." Moreover, the trial court also considered "the appropriateness of imposing a community control sanction or a combination of community control sanctions under ORC 2929.25 through 2929.28 * * *." While the trial court did not go through each statutory factor during the sentencing hearing, the trial court noted that it handed down its sentence for several reasons, including Wisby's continual violation of court orders and Wisby continually being guided by his emotions. These specific concerns reflect consideration of the statutory factors of R.C. 2929.22(B)(1)(a), (b), (c) and (e) including the nature and circumstances of the offense, Wisby's history of violating orders and his risk for continuing to commit other offenses, as well as Wisby's history and character which reveal a pattern of repetitive, compulsive, or aggressive behavior.

**{¶ 33}** The sentence imposed on Wisby falls within the statutory limits, and there is no affirmative indication that the trial court failed to consider the factors contained in R.C. 2929.22, especially when the trial court's judgment entry specifically references the trial court's consideration of the statutory factors. Consequently, the trial court is presumed to have complied with R.C. 2929.22. Even in the absence of the presumption, however, the fact that the trial court considered Wisby's inability to follow orders and his emotional predispositions at the sentencing hearing indicates that the trial court, in fact, considered the relevant statutory factors. Therefore, we find that the trial court did not abuse its discretion in sentencing Wisby as it did.

**{¶ 34}** Having found no abuse of discretion in the trial court's sentence, Wisby's second assignment of error is overruled.

**{¶ 35}** Assignment of Error No. 3:

{¶ 36} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS THUS PREJUDICING HIS RIGHT TO A FAIR TRIAL.

{¶ 37} Wisby argues in his third assignment of error that he received ineffective assistance of counsel.

{¶ 38} The Sixth Amendment pronounces an accused's right to effective assistance of counsel. Warning against the temptation to view counsel's actions in hindsight, the United States Supreme Court has stated that judicial scrutiny of an ineffective assistance claim must be "highly deferential * * *." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052 (1984). The court also stated that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that a defendant must overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶ 39} Also within *Strickland*, the Supreme Court established a two-part test which requires an appellant to establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers*, 12th Dist. No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing *Strickland*.

{¶ 40} Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reviewing court need not address the deficiency issue if appellant was not sufficiently prejudiced by counsel's performance because the appellant must prove both

prongs in order to establish ineffective assistance of counsel. *Id.* at 697.

**{¶ 41}** Wisby argues that his counsel was ineffective for several reasons, including the failure to conduct meaningful voir dire. Wisby asserts that defense counsel's performance was deficient because defense counsel did not ask the potential jurors if they would be able to be fair and impartial to Wisby. The manner in which defense counsel chooses to conduct voir dire is considered a matter of trial strategy. *State v. Ayers*, 12th Dist. Nos. CA2010-12-119, CA2010-12-120, 2011-Ohio-4719, ¶ 62.

**{¶ 42}** Before voir dire started, the trial court specifically told potential jurors that the state and Wisby were entitled to jurors who would approach the case "with open minds and agree to keep their minds open until the verdict is reached. Jurors must be free as humanly possible from bias, prejudice, sympathy, and not influenced by preconceived ideas, either as to the facts or as to the law." The trial court specifically instructed the jury to consider the necessity of fairness, and asked several questions to ensure that the potential jurors had no prior knowledge of the case or the parties. The trial court then asked all the potential jurors if there was "any reason that you know of why you could not sit in this jury today and hear the facts and apply the facts to the law as I give it to you in this case."

**{¶ 43}** The prosecutor also stated during voir dire, "we're trying to obtain a fair trial, a fair jury, people that can look at the facts objectively and decide the facts objectively without emotion * * *." The prosecutor then fully inquired of the potential jurors, and asked questions specifically designed to determine the potential juror's ability to remain fair and impartial. After the trial court and the prosecutor asked multiple questions of the potential jurors to determine whether they could be fair and impartial, defense counsel also inquired, and asked the potential jurors whether they would be willing to consider Wisby's defense and consider how the specific details of the case made it a unique circumstance.

**{¶ 44}** While counsel may not have asked potential jurors if they could be fair and

- 12 -

impartial, the record indicates that defense counsel asked the jurors whether they could accept the defense that would be offered on behalf of Wisby. This decision could certainly be construed as trial strategy, especially because the court and the state had already asked multiple questions to ascertain whether the jury would be fair to Wisby. Moreover, defense counsel made three preemptory challenges, and three potential jurors were excused. This demonstrates that defense counsel had enough information from the potential jurors to determine which would be most suited to sit on Wisby's jury without expressly asking whether they could be fair and impartial.

{¶ 45} Based on the entirety of the voir dire process, defense counsel's performance was not deficient. We would also note that Wisby has failed to demonstrate how defense counsel's decision not to ask any one specific question during voir dire resulted in an unfair jury, or how he suffered any prejudice as a result of counsel's performance during voir dire. Therefore, we find that Wisby did not receive ineffective assistance of counsel during the voir dire stage of the proceedings.

{¶ 46} Wisby next argues that he received ineffective assistance because defense counsel asked very few questions of the state's witnesses and failed to call Wisby's grandfather as a witness. The way a defense counsel chooses to cross-examine the state's witnesses is a matter of trial strategy. *State v. Stewart*, 12th Dist. No. CA2011-09-173, 2012-Ohio-4640, ¶ 14.

{¶ 47} This court has reviewed the transcripts, and we determine that defense counsel was not deficient when cross-examining the state's witnesses. Because of cross-examination, Dyer admitted that she could not identify who was yelling from the van or what was said on the night of the incident. Nor had Dyer known or seen Wisby prior to the night of the incident. The jury also heard evidence that the protection order did not apply to Mullis' mother or children so that Wisby would not have been in violation of the order if he had truly

approached Mullis' mother to inquire about the children. These questions on cross-examination supported Wisby's contention at trial that he did not yell at Mullis and that he only approached in hopes of inquiring of his children. There is no indication that Wisby was prejudiced by the way defense counsel performed cross-examination. Had defense counsel asked more or different questions, there is no indication that the answers would have been helpful to Wisby's defense, or that further cross-examination would have resulted in a not-guilty verdict.

{¶ 48} We also find that counsel was not ineffective for failing to call Wisby's grandfather, who was also a passenger in the van driven by Wisby's grandmother on the night of the incident. Wisby does not indicate in any way how not calling his grandfather was deficient conduct, except to state that his grandfather could have "helped tip the scales" of credibility in his favor. However, the jury did not find Wisby or his grandmother's testimony credible, and there is no indication whatsoever that the jury would have suddenly found the scales of credibility tipped in favor of Wisby had his grandfather testified.

{¶ 49} Wisby also argues that his counsel was ineffective for failing to make a meaningful closing argument, explaining to the jury how to apply the facts and testimony to the law provided by the trial court. The way defense counsel chooses to conduct closing argument is a matter of trial strategy, and cannot be discredited simply because of a guilty verdict. *State v. Wu*, 12th Dist. No. CA96-08-161, 1997 WL 277181 (May 27, 1997). After reviewing the closing argument, we do not find that defense counsel's performance was deficient or prejudicial to Wisby. Instead, defense counsel reiterated the facts in a light most favorable to Wisby, and presented arguments as to why Wisby did not violate the protection order. There is no indication that the results of Wisby's trial would have been different had closing argument been delivered in any other manner.

{¶ 50} Having found that Wisby received effective assistance of counsel, his final

assignment of error is overruled.

**{¶ 51}** Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.