[Cite as *Lakewood v. Bretzfelder*, 2013-Ohio-4477.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98925**

# CITY OF LAKEWOOD

PLAINTIFF-APPELLEE

vs.

# EDWARD A. BRETZFELDER

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Lakewood Municipal Court
Case No. 2011 CRB 01682

**BEFORE:** Kilbane, J., Celebrezze, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 10, 2013

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street
Second Floor
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Pamela L. Roessner
Prosecutor
Ashley L. Belzer
Assistant Prosecutor
City of Lakewood
12650 Detroit Avenue
Lakewood, Ohio 44107

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Edward Bretzfelder, appeals from his convictions for the misdemeanor offenses of assault and unlawful restraint. For the reasons set forth below, we affirm.

{¶2} On August 29, 2011, the defendant was charged in Lakewood Municipal Court with assault, a misdemeanor of the first degree, and unlawful restraint, a misdemeanor of the third degree, in connection with an alleged attack on Delores Mlachak ("Mlachak"), at the Marine Towers East condominium. The defendant pled not guilty, and the matter proceeded to a jury trial on May 16, 2012.

{¶3} Mlachak, who was 84 years old at the time of trial, testified that on August 28, 2011, at around 3:00 p.m., she was picking up bags of discarded papers from the recycling shelves on the various floors of her building. When she arrived on the 14th floor, the defendant, a fellow tenant with whom she had prior arguments, shouted at her to go back to the 15th floor. Mlachak said, "I'm just coming to pick the papers up," and she reached toward a bag of papers on the shelf. The defendant grabbed the bag, came up behind her, and told her to go down the corridor. Mlachak did not comply, and defendant approached her with his arms up. According to Mlachak, they "had contact" as she tried to get away by going under his arms. The defendant then repositioned himself to block her from passing when she changed directions to leave. He then grabbed her arm and threw her, causing her to hit the wall.

**{¶4}** Mlachak further testified that the defendant grabbed her and pushed his body against her, forcing her against the wall. As they were face-to-face, she asked him to let her go. The defendant began calling Mlachak names so she cried out for her friend, Lynn Vizdos ("Vizdos"), who was in the nearby laundry room. Vizdos arrived and warned the defendant that if he did not let go of Mlachak, she would call the police. After the third warning, the defendant let her go.

**{¶5}** The next day, Mlachak noticed severe bruising on her arm and it was sore to the touch, so she decided to make a police report about the incident. At that time, a Lakewood police officer photographed the bruises. A day or two later, another friend, Lynn Cunningham ("Cunningham"), took additional pictures of her arms.

**{¶6}** Vizdos testified that she was doing laundry and heard loud arguing in the common area. She testified that she saw the defendant blocking Mlachak into a corner and grabbing at something in her hand. Mlachak cried out for help, and Vizdos told the defendant to stop and threatened to call the police. Vizdos grabbed the defendant's shoulder to keep him away from Mlachak, and Mlachak then walked away. Later, Vizdos asked the defendant about the incident, and he told her that Mlachak had no right to take the recycle items.

**{¶7}** Lakewood Police Officer, Darren Smykowski ("Officer Smykowski"), testified that on August 29, 2011, he met with Mlachak at the police station. He took a statement from her about the incident and photographed various bruises on her arm. Retired Detective James Sacco ("Detective Sacco") testified that he investigated the

incident and spoke with Mlachak and Vizdos. He attempted to speak with the defendant but was unable to do so. Sacco further testified that he has investigated numerous assault cases and that bruises are rarely in the shape of a perfect handprint.

{¶8} The defense called two witnesses, a forensic pathologist and the defendant. The defendant, who was 67 years old at the time of trial, testified that he walked his dog in the afternoon. When he returned, he saw Vizdos in the hall. They chatted in her apartment, and he told her that he was planning to move and was in the process of packing his belongings. Vizdos gave him newspapers for wrapping various items, and he left when she checked on her laundry. The defendant stated that Mlachak charged at him and demanded the papers. She started to hit him, and he held the papers to his face to block the blows. The defendant stated that he attempted to retreat but she "wanted to turn around and fight me in another direction." Vizdos then arrived, and the defendant asked her to call the police. The defendant left his papers at the recycle shelf and returned to his apartment. He denied striking Mlachak and denied cornering her. He acknowledged that they were not friends and that they generally avoided each other prior to this incident.

{¶9} Jonathan Arden, M.D. ("Dr. Arden"), a forensic pathologist, testified that he is the former chief medical examiner for the state of Maryland. He testified that he reviewed the police reports and photographs of Mlachak. He stated that, in general, older people tend to have more fragile skin and that medications such as the daily aspirin that Mlachak takes tend to make bruising more likely. Dr. Arden opined that the

photographs presented to the court in this matter were not consistent with Mlachak having been grabbed by someone's hand, because they do not depict a "grab pattern" or marks resembling the fingers of a hand. Rather, the bruising in this matter depicts an irregular pattern and appeared to be consistent with falling or bumping against something with a triangular shape. Dr. Arden acknowledged, however, that not all people bruise in the same manner.

{¶10} The jury subsequently convicted the defendant of assault and unlawful restraint and was sentenced on August 20, 2012. On the assault charge, the defendant was fined $1,000, and a jail sentence of 60 days was imposed. The defendant was placed on 5 years of community control supervision with the balance of 120 days in jail, consecutive with 60 days in jail imposed on the unlawful restraint charge, for a total of 180 days in jail to be imposed for further violation. A fine of $500 was imposed on the charge of unlawful restraint. The conditions of community control supervision were set out in the court's judgment entry journalized on March 19, 2012, and include: no contact directly or indirectly with Mlachak; the defendant was prohibited from returning to Marine Towers East condominium; and the defendant was to enroll in anger management, successfully complete the program, and follow all aftercare and treatment directives.

{¶11} The defendant now appeals and assigns six errors for our review. The assignments of error shall be discussed together and out of order where appropriate.

Assignment of Error One

Due to numerous shortcomings in trial counsel's performance, Appellant received ineffective assistance of counsel.

Assignment of Error Four

Defense counsel was ineffective for failure to prevent the admission of inadmissible and prejudicial 404(B) evidence.

{¶12} Within these assignments of error, the defendant asserts that his trial counsel was ineffective for failing to timely move to allow a defense expert to remain in the courtroom to hear the city's evidence concerning Mlachak's bruises, failing to preserve Mlachak's 911 call to police, failing to argue the defendant's version of events during his closing argument, and failing to object to "other acts" evidence in which Mlachak testified that he had been verbally abusive to her.

{¶13} In order to establish a claim of ineffective assistance of counsel, it must be shown that an attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶14} In order to establish deficient performance, it must be shown that, under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. Debatable trial tactics and strategies generally do not constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643.

{¶15} In order to establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  *Strickland* at 694.   A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding.  *Id*.

### Failure to Exempt Expert from Order of Separation of Witnesses

{¶16} Evid.R. 615 provides:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. * * *

{¶17} Evid.R.  703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing.

{¶18} In *Meyer v. Fisher*, 5th Dist. Stark No. 1999CA00302, 2000 Ohio App. LEXIS 1703 (Apr. 17, 2000), the court noted that this rule does not set forth an exception for expert witnesses and stated:

That an expert witness may be assisted by being present in the courtroom to hear the testimony upon which he is expected to base his expert opinion, as set forth in Rule 703, does not in our judgment furnish an automatic basis for exempting him from sequestration under Rule 615.  It is well established that the decision whether to permit an expert to remain in the courtroom during trial is within the discretion of the trial judge and should not normally be disturbed on appeal.

{¶19} In this matter, the record indicates that as trial commenced the defendant's counsel asked the trial court to permit Dr. Arden to remain in the courtroom, pursuant to Evid.R. 703.   In denying the motion, the trial court stated, "I indicated there would be a separation of witnesses last week.   You said fine.   And that's why we have a final pretrial."   Under *Fisher*, we are unable to conclude that trial counsel committed an error.

In any event, although the defendant complains that the expert did not hear the city's evidence regarding Mlachak's bruises, the defendant does not establish how he was prejudiced by the trial court's separation of witnesses. This expert could have been asked to answer hypothetical questions about the victim's physical state based on evidence of her physical symptoms. *See State v. Lilley*, 5th Dist. Stark No. 2003CA00073, 2003-Ohio-6792. Defense counsel was not ineffective for failing to exempt him from a separation of witnesses.

### Defense Counsel's Closing Argument

**{¶20}** The manner in which the defense counsel chooses to conduct closing argument is a matter of trial strategy, and cannot be discredited simply because of a guilty verdict. *State v. Wisby*, 12th Dist. Clermont No. CA2012-06-049, 2013-Ohio-1307, ¶ 49, citing *State v. Wu*, 12th Dist. Butler No. CA96-08-161, 1997 Ohio App. LEXIS 2228 (May 27, 1997).

**{¶21}** Here, the defendant complains that the closing highlighted Mlachak's assertions rather than the defendant's testimony. We note that counsel did reiterate the essence of the defendant's testimony, because he stated that the defendant wanted the papers but Mlachak was the aggressor and insisted on taking them. In any event, counsel cannot be faulted for deciding, as a tactical strategy, to challenge Mlachak's testimony as illogical and unworthy of belief by pointing to claimed inconsistencies.

### Failure to Preserve 911 Call

**{¶22}** The Sixth Appellate District has held that where a defendant has produced no evidence that a recording would have been exculpatory, he has not demonstrated prejudice. *State v. Rubel*, 3d Dist. Henry No. 7-07-08, 2008-Ohio-1137, citing *State v. Haskins*, 6th Dist. Erie No. E-01-16, 2003-Ohio-70, ¶ 59. *Accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865 ("[I]t is unclear how the failure to preserve this evidence demonstrates the claim of ineffective assistance. * * * Thus, Powell's argument is purely speculative and cannot serve as the basis for an ineffectiveness claim").

**{¶23}** In this matter, Mlachak described the 911 recording. The defendant has produced no evidence that a recording would have been exculpatory. He has not shown how the failure to preserve this evidence demonstrates the claim of ineffective assistance, he has not demonstrated prejudice, and this claim is entirely speculative. It therefore cannot serve as the basis for an ineffectiveness claim.

### Failure to Object to Other Acts Evidence

**{¶24}** Evid.R. 404(B) provides:

> Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**{¶25}** Here, the defendant complains that his counsel erred in failing to object to Mlachak's testimony that he had been verbally abusive to Mlachak prior to the incident at issue. The trial court could have properly determined, however, that this evidence was admissible to establish the defendant's motive, intent, and the absence of mistake. We therefore conclude that counsel did not commit an error in failing to object to this evidence. *Accord State v. Banks*, 5th Dist. Fairfield No. 10 CA 36, 2011-Ohio-3801, ¶ 160. In any event, it is unlikely that but for the admission of this evidence the outcome of the defendant's trial would have been different.

**{¶26}** In accordance with all of the foregoing, the claim of ineffective assistance of counsel must fail. The first and fourth assignments of error are without merit.

Assignment of Error Two

Appellant's conviction is against the manifest weight of the evidence.

**{¶27}** When reviewing a claim challenging the manifest weight of the evidence, the court, after reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversal on manifest weight grounds is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

**{¶28}** In this matter, we cannot say that the jury lost its way in convicting the defendant of assault and unlawful restraint. The city's evidence indicated that as Mlachak arrived on the 14th floor to pick up the newspapers for recycling, the defendant ordered her to leave the area, grabbed the bag, and used his body to corner her. As she attempted to leave the area, the defendant repositioned to block her from passing. When Mlachak changed directions to leave, the defendant grabbed her arm and threw her, causing her to hit the wall. The defendant grabbed her and did not let go of her until after Vizdos threatened to call the police. Vizdos testified that the defendant cornered Mlachak, that she separated them, and that the defendant later accused Mlachak of stealing the recycle items. The defendant's testimony was that Mlachak charged at him, demanding the papers and wildly attacking him. He then left the papers on the shelf after the altercation. Under the defendant's version of events, Mlachak was the aggressor, and her bruises were unrelated to the altercation. The jury could have properly determined that the defendant's version of the events was unlikely. The jury may also have accepted the testimony of Vizdos, a disinterested witness, who established that there had been a loud argument, that the defendant had restrained Mlachak in the corner, and that the defendant was upset with Mlachak for taking the papers. The jury did not lose its way in accepting the city's version of events in which the defendant was the aggressor, and that he assaulted and unlawfully restrained Mlachak.

**{¶29}** The second assignment of error is without merit.

Assignment of Error Three

Insufficient evidence supported Appellant's conviction for assault.

**{¶30}** The role of an appellate court presented with a sufficiency of the evidence is as follows:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶31}** The elements of assault are set forth in R.C. 2903.13 (A) as follows:

> No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

**{¶32}** The defendant argues that there is insufficient evidence that he assaulted Mlachak, because the evidence established only that he grabbed her as an incidental part of restraining her. He claims that the evidence did not establish that he acted with knowledge that he would probably harm her.

**{¶33}** The city's evidence indicated that as Mlachak reached toward a bag of papers on the shelf, the defendant grabbed the bag, came up behind her and told her to leave. After Mlachak refused to comply, the defendant approached her with his arms up and blocked her from passing. Mlachak pivoted to leave, and the defendant grabbed her arm and threw her into the wall. He then grabbed her and pushed his body against her, forcing her against the door, again refusing to allow her leave. Viewing this

evidence in a light most favorable to the prosecution, we find that this evidence demonstrated that the defendant did not simply grab Mlachak as an incidental part of restraining her. Rather, apart from the restraint, the state's evidence established the defendant's independent acts of grabbing Mlachak and throwing her into the wall, which caused injury to her. This evidence, if believed, is sufficient to establish the offense of assault beyond a reasonable doubt. Therefore, we find sufficient evidence to support the assault conviction.

{¶34} The third assignment of error is without merit.

Assignment of Error Five

The trial court abused its discretion in sentencing Appellant to 60 days in jail, an aggregate $1,500 fine, and forbidding Appellant from accessing Appellant's own real property.

{¶35} This court reviews misdemeanor sentences for an abuse of discretion. *State v. Cossack*, 7th Dist. Mahoning No. 08 MA 161, 2009-Ohio-3327, ¶ 20; *State v. Fields*, 12th Dist. Brown No. CA2009-05-018, 2009-Ohio-6921, ¶ 10.

{¶36} In imposing a sentence for a misdemeanor offense, a trial court must consider the purposes and principles of misdemeanor sentencing as set forth in R.C. 2929.21, as well as the sentencing factors set forth in R.C. 2929.22.

{¶37} The purposes and principles of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.21.

**{¶38}** R.C. 2929.22(B) lists the following sentencing factors a court is to consider in determining the appropriate sentence for a misdemeanor:

(a) The nature and circumstances of the offense or offenses;

(b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;

(c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;

(d) Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;

(e) Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B)(1)(b) and (c) of this section.

**{¶39}** In addition, a court "may consider any other factors that are relevant to achieving the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code." R.C. 2929.22(B)(2).

**{¶40}** The trial court is not required to state on the record its consideration of the above factors when the sentence imposed is within the statutory guidelines. *Fields*, 12th Dist. Brown No. CA2009-05-018, 2009-Ohio-6921, at ¶ 25. In the case of a silent record, the trial court is entitled to the presumption it considered the statutory criteria, absent an affirmative showing by the defendant that it did not do so. *State v. Hughley*,

8th Dist. Cuyahoga Nos. 92588, 93070, 2009-Ohio-5824, ¶ 16; *State v. Raby*, 9th Dist. Wayne No. 05CA0034, 2006-Ohio-1314, ¶ 9.

{¶41} The statutory guidelines for a first-degree misdemeanor offense allow a trial court to sentence the offender to a maximum jail term of 180 days and a maximum fine of $1,000. R.C. 2929.24(A)(1); R.C. 2929.28(A)(2)(a)(i). There is also nothing in the misdemeanor sentencing statutes that prohibits consecutive sentences for multiple offenses.

{¶42} In this matter, the sentences are within the permissible range for the offenses, and we find no abuse of discretion. From the record, the attack was unprovoked, and victim's age made her particularly vulnerable and made the impact of the offense more serious. The record also indicated that the defendant has psychological problems, which his counsel admitted affected his conduct.

{¶43} With regard to the term of probation that the defendant not return to the premises, we observe that in *State v. Keever*, 12th Dist. Warren No. CA2012-01-005, 2012-Ohio-4643, the court held that, after convicting the defendant of three counts of menacing women in his subdivision, the trial court was within its discretion in establishing a term of probation forbidding the defendant from being within 1,000 yards of any of the victims' residences, even though this condition essentially forced the defendant to move. The *Keever* court concluded that this term of probation was reasonably related to rehabilitating the offender, had some relationship to the crime of

which the offender was convicted, and related to conduct that is criminal or reasonably related to future criminality and serves the statutory ends of probation.   The court stated:

> While the order essentially forced Keever to move from his mother's home, the record indicates that Keever directed his menacing behavior to women who specifically lived in the subdivision and near his mother's home. Keever's behavior toward the women in his neighborhood did not extend to women of the general population, and therefore the trial court could reasonably infer that removing Keever from the neighborhood would also remove the set of circumstances that prompted his behavior and therefore allow Keever to focus on his rehabilitation.

**{¶44}** In this matter, the trial court's   trial court stated:

> And he is not to go anywhere near * * * the Marine Towers. * * *   There's a motion to allow him to go back.   I'm not going to have that for a number of reasons.
>
> One, he has shown through his conduct that he can't walk away from a fight.   He's going to go back there and there's going to be other problems.
>
> Two, the other people, some of which are present in Court, others are not, they have the right to the peaceful enjoyment of their own lives their own living quarters where they have chosen to live for the last year free of Mr. Bretzfelder.
>
> If he goes back, he'll do the other six months in jail.

**{¶45}** Similarly, in this matter, the condition of probation prohibiting the defendant from returning to the condominium is reasonably related to rehabilitating the defendant, bears a relationship to the offenses, deters future criminal offenses, and serves the ends of

probation.   Moreover, we note that the defendant testified that, on the day of the incident, he "was packing up, that [he] had had enough of the characters that were in Marine Towers East, and * * * was going to move away[.]"   (Tr. 290-291.)   We therefore conclude that the trial court acted within its discretion in imposing this condition of probation.

{¶46} The fifth assignment of error is without merit.


Assignment of Error Six

The trial court committed plain error by failing to merge Appellant's offenses as allied under Ohio law.

{¶47} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court held that the conduct of the accused must be considered in determining whether two offenses should be merged as allied offenses of similar import under R.C. 2941.25.   *Id.*, at the syllabus.   The determinative inquiry is two-fold: (1) "whether it is possible to commit one offense and commit the other with the same conduct," and (2) "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'"   *Id.* at ¶ 48-49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting).   "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged."   *Id.* at ¶ 50.   "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if

the offenses are committed separately, or if the defendant has separate animus for each offense, then according to R.C. 2941.25(B), the offenses will not merge." *Id*. at ¶ 51.

**{¶48}** As to the first inquiry, whether it is possible to commit one offense and commit the other with the same conduct, we note that the elements of assault are set forth in R.C. 2903.13 (A) as follows:

No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

**{¶49}** The elements of unlawful restraint under Lakewood Codified Ordinances 537.08 are that the defendant knowingly, and without privilege to do so, restrained another of the other person's liberty. As this court explained in *State v. Williams*, 75 Ohio App.3d 293, 298, 599 N.E.2d 377 (8th Dist.1991), the offense of unlawful restraint generally requires that the defendant exercised any force, or express or implied threat of force including a reasonable apprehension of force. Therefore, we conclude that it is possible to commit this offense and the offense of assault with the same conduct.

**{¶50}** Turning to the second inquiry, however, whether the offenses are committed separately or with a separate animus for each offense, the evidence of record indicates that the defendant approached Mlachak with his arms up and blocked her from passing. After Mlachak turned to leave, the defendant grabbed her arm and threw her into the wall. He then grabbed her and pushed his body against her, forcing her against the door, again refusing to allow her leave. On this record, we therefore conclude that the offenses were

committed as separate acts, and that the defendant had a separate animus for each act. The offenses are therefore not allied.

**{¶51}** The sixth assignment of error is without merit.

**{¶52}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Lakewood Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
TIM McCORMACK, J., CONCUR