[Cite as *Mayfield Hts. v. Brown*, 2013-Ohio-4374.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99222**

## CITY OF MAYFIELD HEIGHTS

PLAINTIFF-APPELLEE

vs.

## BETTY J. BROWN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED

Criminal Appeal from the
Lyndhurst Municipal Court
Case No. 08 CRB 01100

**BEFORE:** Kilbane, J., Jones, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 3, 2013

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio 44113-2098

**ATTORNEY FOR APPELLEE**

Dominic J. Vitantonio
Argie, D'Amico & Vitantonio
6449 Wilson Mills Road
Mayfield Village, Ohio 44143

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Betty J. Brown, appeals her conviction for obstructing official business. After careful review of the record and relevant case law, we affirm defendant's conviction, but we reverse and remand for the recalculation of court costs.

{¶2} Defendant was charged with one count of obstructing official business, in violation of Mayfield Heights Codified Ordinances Section 505.14, and in connection with her actions on November 8, 2008, while paramedics were at the home of Evelyn Schwartz ("Schwartz"). Defendant pled not guilty and filed a number of pro se pleadings. On March 17, 2009, the trial court appointed counsel for her and sua sponte ordered her to appear for a competency evaluation.

{¶3} The trial court found the defendant competent to stand trial. On June 9, 2009, the defendant discharged her court-appointed attorney, and the matter proceeded to a jury trial on September 29, 2010. The defendant elected to represent herself with the assistance of stand-by counsel. On October 1, 2010, the jury found the defendant guilty of the charge of obstructing official business. On appeal, this court held that the trial court failed to ensure that the defendant knowingly, intelligently, and voluntarily waived her right to counsel, and the matter was reversed and remanded for a new trial. *See Mayfield Hts. v. Brown*, 8th Dist. Cuyahoga No. 96062, 2012-Ohio-167 ("*Brown I*").

{¶4} The retrial commenced on September 19, 2012. Mayfield Heights dispatcher, Nancy Horvath ("Horvath"), testified that on November 7, 2008, at 3:41 p.m.,

the city received a call for assistance at 1143 Genesee Avenue. The caller, Dean Marinpietri ("Marinpietri"), told the dispatcher that he resides at 1143 Genesee Avenue with his aunt, 92-year-old Schwartz. He stated that he was currently in the hospital and that Schwartz had an unwanted visitor, Eleanor Uhlir ("Uhlir"), and he asked that the police remove Uhlir from the home. Marinpietri stated that Schwartz was ill, and that Uhlir wanted to take her to the hospital, but Schwartz wanted to die at home. Horvath told Marinpietri that she was sending police officers to the home for a welfare check.

{¶5} At approximately 4:06 p.m., Mayfield Heights dispatcher, Anita Pisanni ("Pisanni"), received a follow-up call from Marinpietri. Pisanni advised him that the officers spoke with Schwartz and determined that she wanted Uhlir at her house and that Uhlir was taking care of her. After speaking with police officers on the scene, EMS was dispatched to the home at 4:45 p.m.

{¶6} Mayfield Heights police officer Robert Lord ("Officer Lord") testified that he responded to 1143 Genesee Avenue for a welfare check. The resident, Schwartz, was in bed. She explained that she felt ill so she called Uhlir, and that Uhlir was not an intruder in the home. During the welfare check, Marinpietri called the home twice. During these phone calls, he stated that he had power of attorney over Schwartz. Officer Lord subsequently learned that Marinpietri was not related to Schwartz; but rather, he was her handyman. He had moved into the house to help Schwartz care for it, but it was cluttered and in disarray. Officer Lord also subsequently learned that Marinpietri does not have power of attorney over Schwartz, and that the individual with the power of

attorney is Dorothy Buzek ("Buzek"), who lives in Tennessee. The officers also learned that Uhlir is Schwartz's sister-in-law. Officer Lord became concerned that Schwartz was the victim of undue influence so they determined that they would write a report on the matter and refer it to the city social worker.

{¶7} Officer Lord testified that Linda Jones ("Jones"), a worker at Manor Care, subsequently arrived at Schwartz's home, and brought fluids for her. At that point, the defendant arrived. The defendant initially refused to provide identification for the officers or to explain her presence at the home, but she eventually stated that she had arrived to care for Schwartz. Schwartz stated that she did not want the defendant there, and that she wanted Uhlir to remain with her. The defendant explained that she was just there to say hello.

{¶8} Officer Lord observed vomit on Schwartz's nightgown and also observed that her bed was soiled. She had a cough and told the officer that she had been throwing up. At approximately 4:52 p.m., Officer Lord called EMS for Schwartz. Eventually, Schwartz told emergency workers that she wanted to go to the hospital.

{¶9} At this point, according to officer Lord, the defendant stated that Schwartz was not going to the hospital, attempted to refute the officer's concerns for Schwartz's health, and began answering questions that the officer directed to Schwartz. The defendant repeatedly refused Lord's requests for her to leave Schwartz's bedroom, and as the officers considered calling Schwartz's doctor, the defendant insisted that she would be calling the individual with the power of attorney over Schwartz. The defendant then

crawled onto Schwartz's bed and prevented the paramedics from taking Schwartz's vital signs. She was placed under arrest.

{¶10} Retired Mayfield Heights police sergeant Larry Brizie ("Brizie") testified that he and EMS workers made a joint decision that it would be in Schwartz's best interest to go to the hospital. The defendant, however, insisted that she was not going to the hospital, impeded the officers from taking her vital signs, and climbed "spread eagle" on top of Schwartz, preventing the officers from taking Schwartz to the hospital.

{¶11} Michael Puin and Mark Palumbo of the Mayfield Heights Fire Department testified that the defendant blocked their entrance to Schwartz's bedroom, interrupted the officers as they attempted to speak with Schwartz, and got onto Schwartz's bed to keep them from assessing Schwartz's condition. They repeatedly asked her to get out of the room but she refused.

{¶12} The defendant elected to present evidence and presented testimony from Jones and Marinpietri. Jones testified that she met Schwartz when Schwartz was at the nursing home. During this time, Jones met Marinpietri, who was living at Schwartz's home. He cooked for her and did work around her house for the past 15 years. Jones cared for Schwartz during the evening, several days per week. According to Jones, after Schwartz became ill, Uhlir insisted that she go to the hospital, but Schwartz did not want to go and preferred to wait until Marinpietri could take her to see her doctor. Following the disagreement with Uhlir, the police arrived for a welfare check. As they prepared to leave, the defendant arrived. The officers later observed that Schwartz had vomited, and

they decided to take her to the hospital. At that point, the paramedics asked to clear the room. According to Jones, Schwartz did not want to go to the hospital, so the defendant said, "no, I am doing what Evelyn wants." The defendant then reached for the phone to call Buzek, as one of the officers reached for the phone. The defendant was then arrested. Jones denied that the defendant jumped onto Schwartz's bed.

{¶13} Marinpietri testified that he was in the hospital recovering from quadruple bypass surgery at the time of the events at issue. He stated that on the day of the incident, Schwartz told him that she did not want to go to the hospital, and that she asked him to call the police to get Uhlir out of her house.

{¶14} On September 20, 2012, the jury found the defendant guilty of obstructing official business. On November 14, 2012, the trial court sentenced the defendant to 90 days in jail, suspended "provided no similar circumstances," and a $750 fine with $250 suspended, plus court costs. On appeal, the defendant assigns three errors.

Assignment of Error One

Defendant was denied due process of law when the court refused to dismiss

the charges.

{¶15} When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶16} Mayfield Heights Codified Ordinances Section 505.14 is modeled after R.C. 2921.31 and provides:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶17} The offense of obstruction of official business requires an affirmative act, not just an omission to act. *Columbus v. Michel*, 55 Ohio App.2d 46, 48, 378 N.E.2d 1077 (10th Dist.1978); *State v. McCrone*, 63 Ohio App.3d 831, 835, 580 N.E.2d 468 (9th Dist.1989). Mere failure to obey a law enforcement officer's request does not constitute obstruction of official business. *Garfield Hts. v. Simpson,* 82 Ohio App.3d 286, 611 N.E.2d 892 (8th Dist.1992). Nonetheless, the statute is satisfied by any act that hampers or impedes a public official in the performance of his lawful duties. *State v. Stayton*, 126 Ohio App.3d 158, 163, 709 N.E.2d 1224 (1st Dist.1998). A violation of R.C. 2921.31 does not require the accused to be successful in preventing officers from doing their job. *State v. Luke*, 4th Dist. Washington No. 09CA30, 2010-Ohio-4309.

{¶18} In this matter, the evidence presented by the city established that the defendant blocked firefighters from entering Schwartz's room, grabbed the telephone when a police officer attempted to call Schwartz's physician, got onto Schwartz's bed, and obstructed the emergency workers as they attempted to determine Schwartz's vital

signs. From the evidence presented by the city, a jury could reasonably conclude that the defendant obstructed or delayed the emergency workers in the performance of their official duties in conducting the welfare check of Schwartz, and impeded them in the performance of their duties. There is sufficient evidence to support the conviction for obstructing official business in violation of Mayfield Codified Ordinances Section 505.14.

{¶19} The first assignment of error is without merit.

Assignment of Error Two

Defendant was denied due process of law when the court imposed costs concerning the first and second trials.

{¶20} The imposition of costs is governed by R.C. 2947.23. Judgment for costs and jury fees

> (A) (1) (a) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. * * *

{¶21} Ohio courts have consistently interpreted this statute to hold that a trial court may assess the costs related to a prosecution only if the State is successful and a defendant has been found guilty and sentenced. *State v. Simmons,* 8th Dist. Cuyahoga No. 91628, 2007-Ohio-6636; *State v. Powers*, 117 Ohio App.3d 124, 128, 690 N.E.2d 32 (6th Dist.1996). The *Powers* court reasoned that the statutory reference to the term "sentence" requires a "judgment formally pronounced by the court or judge upon the defendant after his conviction in a criminal prosecution." *Id.* Further, in *State v.*

*Kortum*, 12th Dist. Warren No. CA2001-04-034, 2002-Ohio-613, the court held that because the defendant's original conviction resulted in a reversal because of the state's failure to provide reliable discovery, the costs of the first jury trial should not be assessed against her.

**{¶22}** In accordance with the foregoing, since the defendant's original conviction was reversed because the trial court failed to ensure that she knowingly, intelligently, and voluntarily waived her right to counsel, and that she voluntarily represented herself, the costs from the original proceedings cannot be assessed to her. Rather, costs may only be assessed from the point of our remand in *Brown I*, i.e., January 19, 2012, to final disposition.

**{¶23}** The second assignment of error is well taken.

## Assignment of Error Three

Defendant was denied due process of law when the court imposed a condition on defendant without placing her on probation.

**{¶24}** Trial courts are given broad discretion in their sentencing authority when it comes to conditions of probation. *Garfield Hts. v. Tvergyak*, 8th Dist. Cuyahoga No. 84825, 2005-Ohio-2445, ¶ 5. Under R.C. 2929.27(C), the court "may impose any other sanction that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." Thus, the sentencing court can impose additional conditions aimed at preserving the interests of justice, protection of the

community, and the rehabilitation of the offender. *Id.* In describing conditions of probation, a term then used to describe suspended sentences for misdemeanors,[1] the Ohio Supreme Court in *State v. Jones*, 49 Ohio St.3d 51, 52, 550 N.E.2d 469 (1990), stated that

> courts should consider whether the condition [of probation] (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to the conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.

The duration of such conditions may not exceed five years. R.C. 2929.25(A)(2).

**{¶25}** In this matter, the trial court suspended the 90-day jail term "provided no similar circumstances." This condition clearly bears a relationship to the offense at issue, is related to rehabilitating the defendant, and is fashioned to prevent future crimes of obstructing official business. It is not consistent with the purposes of misdemeanor sentencing. The trial court did not err and abuse its discretion in establishing this condition for the suspension of the 90-day jail term, but it is subject to a five-year limit.

**{¶26}** The third assignment of error is without merit.

**{¶27}** The defendant's conviction is affirmed, the costs portion of the court's final journal entry is reversed, and the case is remanded for a recalculation of court costs.

---

[1] As explained in *State v. Mack*, 6th Dist. Lucas No. L-11-1065, 2011-Ohio-2439, "[p]rior to the amendment of R.C. 2951.02 and enactment of R.C. 2929.25 under H.B. 490, effective in 2003, the term 'probation' was used when referring to suspended sentences for misdemeanors. *See* former R.C. 2951.02."

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR