[Cite as *Bay Village v. Barringer*, 2014-Ohio-4816.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100959

**CITY OF BAY VILLAGE**

PLAINTIFF-APPELLEE

vs.

**MARK E. BARRINGER**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED AND REMANDED

Criminal Appeal from
Rocky River Municipal Court
Case No. 12 CRB 2802

**BEFORE:**    Blackmon, P.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED:**    October 30, 2014

**ATTORNEYS FOR APPELLANT**

Robert G. Stiefvater
Stiefvater Law, L.L.C.
8748 Brecksville Road, Suite 216
Brecksville, Ohio 44141

Christopher Godinsky
Godinsky Law, L.L.C.
7835-B Freeway Circle
Middleburg Heights, Ohio 44130


**ATTORNEY FOR APPELLEE**

Gary A. Hotz
24461 Detroit Road, Suite 209
Westlake, Ohio 44145

PATRICIA ANN BLACKMON, P.J.:

{¶1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1. Appellant Mark Barringer appeals the trial court's denial of his motion to remove a GPS device. Barringer assigns the following error for our review:

The trial court erred by denying defendant's motion to remove GPS device. (App. at A-1).

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

{¶3} On November 18, 2012, the city of Bay Village, Ohio ("the City") arrested and charged Barringer for violating a temporary protection order. The protective order had been put in place a month earlier because of the acrimonious relationship between some of the residents on East Oakland Road. The City subsequently filed charges against Barringer's mother and neighbor, Paul Jasin. On November 19, 2012, Barringer pleaded not guilty at his arraignment, executed a waiver of speedy trial, and the matter was bound over to the Rocky River Municipal Court.

{¶4} On January 3, 2013, pursuant to a plea agreement, Barringer pleaded no contest to the charge and consented to a finding of guilt. Pursuant to the plea agreement, the charges against Barringer's mother would be dismissed with prejudice. In addition, pursuant to the plea agreement, Barringer was required to move out of the city of Bay Village ("Bay Village"), where he had been residing with his elderly parents. The trial court passed the matter for sentencing to allow Barringer to provide proof that he had found housing outside Bay Village.

{¶5} On February 25, 2013, the trial court sentenced Barringer to 180 days in jail, but suspended the sentence, placed him on two years of basic probation, and ordered him to complete

a counseling course on boundary issues. The trial court also ordered Barringer to pay $300 in fines, plus court costs. In addition, the trial court advised Barringer that he was allowed to visit his elderly parents, but ordered him not to have any contact with Paul Jasin and the other neighbor, or act in any manner that could be construed as harassment.

{¶6} On July 2, 2013, the city filed a motion to reconsider Barringer's sentence. In its motion, the City argued that the trial court's decision to place Barringer on probation was premised on his moving outside of Bay Village. The City contended that Barringer was still residing with his parents in Bay Village.

{¶7} On August 15, 2013, the trial court held a hearing on the City's motion to reconsider. At the hearing, the probation department indicated that Barringer had in fact signed a lease for a property outside of Bay Village, but there were some issues with mold in the apartment. The probation department also indicated that Barringer attempted to establish suitable housing outside of Bay Village, but had encountered difficulties. The trial court continued the matter to August 29, 2013, for Barringer to submit acceptable proof that he had relocated outside of Bay Village's city limits.

{¶8} On August 29, 2013, Barringer submitted acceptable proof that he had moved outside of Bay Village. The trial court journalized an entry indicating that it had ordered Barringer to be monitored by a GPS device, effective the date of the hearing, until further order of the trial court. The journal entry indicated that the GPS device would be paid for out of the court's IDAM fund.

{¶9} On October 16, 2013, Barringer filed a motion to remove the GPS device. Barringer's motion was premised on his claim that the trial court had verbally ordered the GPS device to be worn for two months. On November 27, 2013, Barringer filed a supplemental

motion to remove the GPS device arguing that the trial court had no authority to modify the sentence.

{¶10} On January 2, 2014, the trial court held a hearing on Barringer's motion to remove the GPS device. At the hearing, Community Control Officer Nash testified that her office had been receiving numerous complaints, via e-mail and telephone, that Barringer was living at his parents' home in Bay Village. Nash presented a GPS report that indicated Barringer was spending approximately seven hours per day at his parents' home in Bay Village. The report indicated that Barringer typically left his parents' home around 8 p.m., slept somewhere else and then returned around 8 a.m. the next day.

{¶11} At the hearing, Barringer indicated that he was operating his general contracting business from his parents' home and that most of the tools and equipment are stored in the garage. Barringer also indicated that he supervises employees that come back and forth to his parents' home to pick up equipment for various jobs. In addition, Barringer indicated that most of the work his business gets is located in Bay Village. Further, Barringer indicated he serves as a caregiver for his parents. Finally, Barringer insisted that he had done nothing to provoke any of the neighbors.

{¶12} At the end of the hearing, the trial court denied Barringer's motion to remove the GPS device.

### GPS Device

{¶13} In the sole assigned error, Barringer argues the trial court erred when it denied his motion to remove the GPS device. Specifically, Barringer contends that the trial court lacked jurisdiction to modify his sentence to require placement of the GPS device in the first instance.

**{¶14}** Trial courts are given broad discretion in their sentencing authority when it comes to conditions of probation. *Mayfield Hts v. Brown*, 8th Dist. Cuyahoga No. 99222, 2013-Ohio-4374, citing *Garfield Hts. v. Tvergyak*, 8th Dist. Cuyahoga No. 84825, 2005-Ohio-2445, ¶ 5.

**{¶15}** Under R.C. 2929.27(C), the court "may impose any other sanction that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." Thus, the sentencing court can impose additional conditions aimed at preserving the interests of justice, protection of the community, and the rehabilitation of the offender. *Id*.

**{¶16}** In describing conditions of probation, a term then used to describe suspended sentences for misdemeanors, the Ohio Supreme Court in *State v. Jones*, 49 Ohio St.3d 51, 52, 550 N.E.2d 469 (1990), stated that

> courts should consider whether the condition [of probation] (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to the conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.

The duration of such conditions may not exceed five years. R.C. 2929.25(A)(2).

**{¶17}** Before discussing the denial of Barringer's motion to remove the GPS device, we note that the trial court had full authority under R.C. 2929.25(B) to require placement of the GPS device. R.C. 2929.25(B) provides:

> If a court sentences an offender to any community control sanction or combination of community control sanctions pursuant to division (A)(1)(a) of this section, the sentencing court retains jurisdiction over the offender and the period of community control for the duration of the period of community control. Upon the motion of either party or on the court's own motion, the court, in the court's sole discretion and as the circumstances warrant, may modify the community control sanctions or conditions of release previously imposed, substitute a community

control sanction or condition of release for another community control sanction or condition of release previously imposed, or impose an additional community control sanction or condition of release.

{¶18} Thus, pursuant to the above, the trial court had full authority to modify the conditions of the community control sanctions to achieve the overriding purposes of R.C. 2929.27(C). Contrary to Barringer's contention, the trial court's action herein did not constitute an impermissible modification of his sentence. Here, Barringer did not receive additional fines, additional jail time, or the length of his community control extended.

{¶19} Turning our attention to the denial of the motion, central to Barringer's plea agreement with the City was Barringer's promise to move outside of Bay Village. As previously stated, Barringer ultimately furnished proof that he had moved from Bay Village. However, the City began receiving reports via emails and telephone calls from residents on East Oakland Road that Barringer was still living in Bay Village.

{¶20} At the hearing, attempting to shed light into his thought processes, the trial court stated:

> So I was trying to do the deterring thing by putting a GPS on there so one or two things would happen: That either it's going to show me that Mark is not spending the majority of 24 hours a day at East Oakland, and, therefore, I could dissuade the individuals that are making their constant complaints. Robert, trust me, it's been things as far as blowing leaves on people, snow-blowing things into their driveway, cameras being put up. I don't mean to trivialize any of this stuff, but it's the most dysfunctional neighborhood I've ever come across with accusations that are going back and forth.
>
> Our attempt was to remove this gentleman from the neighborhood, and, therefore, hopefully diffuse what was going on. I'm going to get a report from Mrs. Nash that's going to show me that Mr. Barringer's majority of the hours of the day are spent on East Oakland.
>
> It's going to confirm the complaints that the neighbors of the Barringers have been placing upon Mr. Hotz, Mayor Sutherland, people on council, the chief of police, and Mrs. Nash, that Mark's presence is still there the majority of the time

on East Oakland, which is basically not what we agreed to back in February when charges were dismissed against the parents, against the neighbor, and Mark agreed to plead to the temporary protection order.

Tr. 5-6.

**{¶21}** As discussed earlier, the GPS report indicated that Barringer was spending approximately seven hours during the daytime at his parents' home in Bay Village would leave, sleep somewhere else, and return by 8 a.m. the next day. As such, Barringer's action had contravened the entire basis of the plea agreement. Consequently, the trial court did not err by denying the motion to remove the GPS device. By denying the motion, the trial court would be able to monitor Barringer to ascertain that he no longer lived in Bay Village.

**{¶22}** Nonetheless, at oral argument, Barringer raised for the first time that the journal entry of the sentencing hearing did not indicate that he was required to move out of Bay Village. In the instant case, despite the lengthy discussions on the record involving Barringer moving out of Bay Village as a condition of the plea agreement, the journal entry does not reflect that specific condition. The axiomatic rule is that a court speaks through its journal entries. *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 12.

**{¶23}** However, because of the numerous discussions on the record about this condition, including the trial court passing the matter for sentencing to allow Barringer to provide proof that he had moved out of Bay Village, as well as Barringer submitting acceptable proof that he had moved out of Bay Village, we conclude this oversight was a clerical mistake.

**{¶24}** Crim.R. 36 provides that clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time. A nunc pro tunc entry is an appropriate vehicle by which a trial court may correct a judgment of conviction that contains errors caused by oversight or omission. *State ex*

*rel. DeWine v. Burge*, 128 Ohio St.3d 236, 2011-Ohio-235, 943 N.E.2d 535, ¶ 17. Such an entry is to be used to reflect what a trial court actually did, not what the court might or should have done. *Id.*, citing *State ex rel. Mayer v. Hensen*, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 14.

**{¶25}** Consequently, because the record more than adequately reflects that moving out of Bay Village was a condition of the plea agreement and Barringer's subsequent action of securing a residence outside of Bay Village, we overrule the sole assigned error, affirm the trial court's decision, but remand the matter to the trial court for the limited purpose of correcting the journal entry to reflect this condition.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court to issue a nunc pro tunc entry to correctly reflect that Barringer was required to move out of Bay Village as condition of the plea agreement.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

PATRICIA ANN BLACKMON, PRESIDING JUDGE

TIM McCORMACK, J., CONCURS;
MELODY J. STEWART, J., CONCURS IN
JUDGMENT ONLY WITH ATTACHED OPINION

MELODY J. STEWART, J., CONCURRING IN JUDGMENT ONLY:

{¶27} I agree that this case should be affirmed and remanded to correct the sentencing entry nunc pro tunc. I disagree, however, with the majority's reasons: that Barringer's action (being at his parents' house) contravened the bases of the plea agreement and that the court needed to ascertain that Barringer no longer lives in the city.

{¶28} The plea agreement Barringer entered into with the city required him to no longer live in Bay Village. He provided proof that he did not live in Bay Village. But the plea agreement did not prohibit him from going to his parents' home, nor did it require him to stay out of the city completely. As the majority notes, the trial court has the authority to order placement of the GPS device. Under the same statutory authority, the trial court likewise has the discretion to continue GPS monitoring as it sees fit during the term of Barringer's probation. However, if the court denied Barringer's motion to discontinue monitoring in order to determine that Barringer no longer lived with his parents on East Oakland, the court may be said to have abused its discretion by doing so. There was no evidence presented that Barringer lived with his parents or anywhere else in Bay Village.

{¶29} At the hearing on the motion, the court noted that various city officials had been receiving complaints about Barringer being on East Oakland "the majority of the time." The trial court also noted that, if indeed the complaints are true, it "is basically not what we agreed to back in February * * * [when] Mark agreed to plead to the temporary protection order." It is unclear what the court meant by "[it's] basically not what we agreed to." If Barringer was only required to move from the street and the city, he submitted proof that he did so, and the GPS monitor reports showed that he did not stay overnight at his parents' home. However, with the information regarding the complaints before it, the court acted well within its discretion to deny

the motion to remove the GPS device in order to monitor the situation on East Oakland and to assess whether Barringer posed any threat to the community.