[Cite as *State v. Recker*, 2014-Ohio-4993.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO. 12-14-03

      v.

CHARLES RECKER,                   O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO. 12-14-04

      v.

CHARLES RECKER,                   O P I N I O N

      DEFENDANT-APPELLANT.

Appeals from Putnam County Municipal Court
Trial Court Nos. 2014 CR B 00026-01 and 2014 CR B 00026-02

**Judgments Affirmed**

Date of Decision: November 10, 2014

APPEARANCES:

    *John A. Poppe* for Appellant

    *Todd C. Schroeder* for Appellee

**PRESTON, J.**

{**¶1**} Defendant-appellant, Charles Recker ("Recker"), appeals the Putnam County Municipal Court's sentencing entries, each of which sentenced Recker to, among other things, five years of probation, including a condition that Recker have "no contact with victim[;] not to be within 250 feet." Recker argues that the trial court abused its discretion by imposing that condition. The trial court also notified Recker of his obligation to register as a sex offender for 15 years. He argues that this requirement constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution. For the reasons that follow, we affirm.

{**¶2**} On February 11, 2014, Deputy Marvin Schwiebert of the Putnam County Sheriff's Office filed a complaint against Recker, charging him with Counts One and Two of sexual imposition in violation of R.C. 2907.06(A)(1), third-degree misdemeanors. (Doc. No. 1). Count One stemmed from a December 2010 incident in which Recker touched one of his nephews inappropriately. (*See id.*); (Apr. 29, 2014 Tr. at 8-9). Count Two stemmed from a March 2012 incident in which Recker touched another one of his nephews inappropriately. (*See id.*); (*Id.* at 9-10). The trial court assigned case numbers 2014 CR B 0026-01 and 2014 CR B 0026-02 to Counts One and Two, respectively. (*See* Doc. Nos. 25, 24).

{¶3} On February 25, 2014, Recker entered pleas of not guilty to the counts. (Doc. No. 9).

{¶4} Recker and plaintiff-appellee, the State of Ohio, reached a plea agreement, and the trial court held a change-of-plea hearing on April 14, 2014. (*See* Apr. 14, 2014 Tr. at 2); (Doc. No. 23). Under the plea agreement, Recker pled no contest to Counts One and Two. (Apr. 14, 2014 Tr. at 5-6); (Doc. Nos. 23, 24, 25). The trial court accepted Recker's no-contest pleas and, after Recker stipulated to the facts and finding of guilt, the trial court found Recker guilty of Counts One and Two. (*Id.* at 6); (*Id.*).

{¶5} The trial court held a sentencing hearing on April 29, 2014. (Apr. 29, 2014 Tr. at 2). The trial court imposed identical sentences on each of the two counts. Specifically, the trial court sentenced Recker to 60 days in jail and a $500 fine on each count. (*Id.* at 25-26); (Doc. No. 30). The trial court suspended 45 days of each 60-day jail sentence on the following conditions: that Recker commit no similar offenses for five years; that he serve five years of probation under the supervision of the Putnam County Municipal Court Probation Department and abide by its rules; and that he complete an assessment at a counseling center and

abide by its recommendation.[1]  (*Id.*); (*Id.*).  The trial court imposed the following "[a]dditional conditions of probation" on each count:  "1) no contact with victim[;] not to be within 250 feet"; and "2) complete sex offender treatment program." (*Id.*); (*Id.*).  The trial court ordered that Recker serve the sentences on Counts One and Two consecutively.  (*Id.*); (*Id.*).  The trial court also notified Recker of his duties as a sex offender.  (Apr. 29, 2014 Tr. at 4-8, 26); (Doc. Nos. 31, 32).

{¶6} The trial court filed its sentencing entries on April 29, 2014.  (Doc. No. 30).

{¶7} On May 27, 2014, Recker filed a notice of appeal in each case.  (Doc. Nos. 40, 43).  He raises two assignments of error for our review.

### Assignment of Error No. I

**The trial court abused its discretion by including a condition that appellant cannot be within two hundred and fifty feet of the victim's home.**

{¶8} In his first assignment of error, Recker argues that the trial court abused its discretion by imposing as a condition of community control on Counts One and Two that Recker have "no contact with victim[;] not to be within 250 feet." (Doc. No. 30).  We disagree.

---

[1] The transcript of the sentencing hearing is inconsistent with the sentencing entry for Count One.  Namely, the transcript reflects that the trial court suspended "35 days," as opposed to 45 days, of the 60-day jail sentence on Count One.  (Apr. 29, 2014 Tr. at 25).  On the sentencing entry, however, the trial court wrote that it suspended 45 days of the 60-day jail sentence on Count One.  (Doc. No. 30).  The parties do not dispute that the trial court suspended 45 days of both 60-day jail sentences on Counts One and Two, so we will not address that issue.

**{¶9}** We begin by discussing the misdemeanor-sentencing statutes, including the potential sanctions that a trial court may impose as part of a misdemeanor sentence. The parties and the trial court appear to use the terms "community control" and "probation" interchangeably even though they have different meanings under the misdemeanor-sentencing statutes. "Prior to amendment of R.C. 2951.02 and enactment of R.C. 2929.25 under H.B. 490, effective in 2003, the term 'probation' was used when referring to suspended sentences for misdemeanors."[2] *State v. Mack*, 6th Dist. Lucas No. L-11-1065, 2012-Ohio-2960, ¶ 1, fn. 1. *See also Mayfield Hts. v. Brown*, 8th Dist. Cuyahoga No. 99222, 2013-Ohio-4374, ¶ 24, fn. 1, citing *Mack*. "With the statutory change, the term 'community control' applies." *Mack* at ¶ 1, fn. 1, citing R.C. 2929.25. As we will explain below, "probation" is an available community-control sanction in misdemeanor sentencing.

**{¶10}** Under R.C. 2929.25(A)(1), when sentencing an offender for a misdemeanor when a jail term is not required by law, the sentencing court may do either of the following:

(a) Directly impose a sentence that consists of one or more community control sanctions authorized by section 2929.26, 2929.27, or 2929.28 of the Revised Code. The court may impose

---

[2] Our discussion in this case applies only to misdemeanor sentencing; it does not apply to felony sentencing.

any other conditions of release under a community control sanction that the court considers appropriate. If the court imposes a jail term upon the offender, the court may impose any community control sanction or combination of community control sanctions in addition to the jail term.

(b) Impose a jail term under section 2929.24 of the Revised Code from the range of jail terms authorized under that section for the offense, suspend all or a portion of the jail term imposed, and place the offender under a community control sanction or combination of community control sanctions authorized under section 2929.26, 2929.27, or 2929.28 of the Revised Code.

*See State v. Geiger*, 169 Ohio App.3d 374, 2006-Ohio-5642, ¶ 12 (3d Dist.). In this case, as to each count, the trial court imposed a jail term under R.C. 2929.24 and suspended a portion of each jail term. Therefore, R.C. 2929.25(A)(1)(b) authorized the trial court to impose community-control sanctions. *State v. Pope*, 9th Dist. Medina No. 13CA0031-M, 2014-Ohio-2864, ¶ 11.

{¶11} "Community control sanctions can be residential under R.C. 2929.26, nonresidential under R.C. 2929.27, or financial under R.C. 2929.28." *Id.* at ¶ 12, citing R.C. 2929.25(A)(1)(b). *See also State v. Blankenship*, 192 Ohio App.3d 639, 2011-Ohio-1601, ¶ 6 (10th Dist.). A "term of intensive probation

supervision" and a "term of basic probation supervision" are two of the available nonresidential community-control sanctions listed in R.C. 2929.27. R.C. 2929.27(A)(5) and (6). *See also State v. Patton*, 10th Dist. Franklin No. 06AP-665, 2007-Ohio-1296, ¶ 10; *State v. Briskey*, 7th Dist. Mahoning No. 12 MA 63, 2012-Ohio-5340, ¶ 12.

{¶12} In addition, "[u]nder R.C. 2929.27(C), the court 'may impose any other sanction that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing.'" *Brown*, 2013-Ohio-4374, at ¶ 24, quoting R.C. 2929.27(C). *See also State v. Keever*, 12th Dist. Warren No. CA2012-01-005, 2012-Ohio-4643, ¶ 10 (noting that R.C. 2929.25(C)(2) provides "that in the 'interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior, the court may impose additional requirements on the offender' and the 'offender's compliance with the additional requirements also shall be a condition of the community control sanction imposed upon the offender'"). "The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). *See also State v. Coleman*, 4th Dist. Scioto No. 05CA3037, 2006-Ohio-3200, ¶ 21. "To achieve those purposes, the sentencing court shall consider the impact of the offense upon the victim and the need for

changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." R.C. 2929.21(A). *See also Coleman* at ¶ 21.

**{¶13}** The "goals of community control" are "rehabilitation, administering justice, and ensuring good behavior." *State v. Barnes*, 12th Dist. Clermont No. CA2008-10-090, 2009-Ohio-3684, ¶ 15, citing *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, ¶ 13, 16 and *State v. Jones*, 49 Ohio St.3d 51, 52 (1990). *See also State v. Westrick*, 196 Ohio App.3d 141, 2011-Ohio-1169, ¶ 15 (3d Dist.), citing *Talty* at ¶ 16. In determining whether a sanction, or "condition," of community control reasonably relates to these goals, courts "'should consider whether the [sanction or] condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation [or community control].'" (Bracketed text added.) *Westrick* at ¶ 15, quoting *Jones* at 52.[3] *See also Barnes* at ¶ 16 and *State v. Rexroad*, 3d Dist. Wyandot No. 16-08-21, 2009-Ohio-1657, ¶ 22 (applying the *Jones* factors in misdemeanor-sentencing cases).

---

[3] As noted above, at the time the Supreme Court of Ohio issued its opinion in *Jones*, the term "probation" was "used to describe suspended sentences for misdemeanors." *Brown*, 2013-Ohio-4374, at ¶ 24, fn. 1, quoting *Mack*, 2012-Ohio-2960, at ¶ 1, fn. 1. The term "community control" replaced the term "probation" in misdemeanor sentencing. *See Mack* at ¶ 1, fn. 1.

**{¶14}** "'We review the trial court's imposition of community-control sanctions under an abuse-of-discretion standard.'" *State v. Oates*, 3d Dist. Hardin No. 6-12-19, 2013-Ohio-2609, ¶ 21, quoting *Talty* at ¶ 10. *See also Barnes* at ¶ 15 and *Rexroad* at ¶ 22. "'A trial court has broad discretion in imposing community-control sanctions.'" *Oates* at ¶ 21, quoting *Westrick* at ¶ 15, citing *Talty* at ¶ 10. "A trial court's discretion in imposing community-control sanctions is not limitless, however." *Id.*, citing *Westrick* at ¶ 15, citing *Jones* at 52. As we discussed above, "community-control conditions must be reasonably related to the statutory ends of community control and must not be overbroad." *Id.*, citing *Westrick* at ¶ 15, citing *Talty* at ¶ 16.

**{¶15}** When sentencing Recker on Count One at the sentencing hearing, the trial court placed Recker "on probation for a period of five years," "[w]ith additional conditions of probation being that there be no contact with the victim, and not to be within 250 of the same * * *." (Apr. 29, 2014 Tr. at 25). The trial court did the same on Count Two, sentencing Recker to "five years probation," "again with additional conditions of probation being no contact with the victim and not to be within 250 feet."[4] (*Id.* at 25-26). The trial court included this condition in its sentencing entry for each count. (Doc. No. 30).

---

[4] Later at the sentencing hearing, the trial court described the 250-foot no-contact zone as a "community control sanction." (Apr. 29, 2014 Tr. at 27).

{¶16} On appeal, Recker characterizes the 250-foot no-contact condition on each count as preventing him from "mov[ing] within two hundred and fifty feet of the victim's home." (Appellant's Brief at 2). Recker argues that because the victims, Recker's nephews, live "across the street" from him, the 250-foot no-contact condition will restrict how he can use his property and prevent him from turning north onto the road in front of his house. (*Id.* at 1). Recker argues that under the three *Jones* factors, the 250-foot no-contact condition is punitive and not reasonably related to addressing his "psychological problems," "has the additional impact of robbing [Recker] of the use of his property" and amounts to "a taking of that portion of the land," and does not relate to future criminality or criminal conduct, such as "possessing drugs or child pornography." (*Id.* at 4-5). We are not persuaded by Recker's arguments and conclude that the trial court did not abuse its discretion by requiring that Recker have "no contact with victim[;] not to be within 250 feet." (Doc. No. 30).

{¶17} Considering the second *Jones* factor first, the 250-foot no-contact condition imposed by the trial court has a direct relationship to the offenses of which Recker was convicted. The trial court convicted Recker of two counts of sexual imposition for having sexual contact with his two nephews. Therefore, ordering that Recker have no contact with and stay at least 250 feet away *from his nephews* is directly related to his sexual-imposition convictions for having sexual

contact *with his nephews*. *See State v. Guevara*, 6th Dist. Wood No. WD-05-040, 2005-Ohio-7006, ¶ 9 (upholding conditions that the defendant have no contact with the victim, who lived near the defendant, and reside at least a mile from the victim's residence).

{¶18} Under the first *Jones* factor, the 250-foot no-contact condition is reasonably related to rehabilitating Recker because it is aimed at keeping him out of situations where he may be tempted to reoffend. *See State v. Hultz*, 5th Dist. Ashland No. 06-COA-003, 2006-Ohio-4056, ¶ 14 ("The removal of appellant from places of temptation is related to promoting rehabilitation and good behavior and deterring future criminality."). In other words, it was reasonable for the trial court to believe that requiring Recker to stay at least 250 feet away from his nephews would remove him from the set of circumstances that prompted his unlawful behavior and allow him to focus on his rehabilitation and address the "psychological problems" from which he says he suffers. (Appellant's Brief at 4). *See Keever*, 2012-Ohio-4643, at ¶ 16.

{¶19} Under the third factor from *Jones*, the 250-foot no-contact condition relates to conduct that is reasonably related to future criminality and serves the statutory ends of community control—rehabilitation, administering justice, and ensuring good behavior. The record reflects that at the time of the sentencing hearing, Recker's victims were 11 and 10 years old. (Apr. 29, 2014 Tr. at 8-9).

The 250-foot no-contact condition is reasonably related to ensuring Recker's good behavior and preventing him from having additional unlawful contact with his nephews. *See Keever* at ¶ 21. As we discussed above, the 250-foot no-contact condition is also reasonably related to rehabilitating Recker. Finally, the 250-foot no-contact condition is reasonably related to protecting Recker's nephews from Recker and administering justice. The record reflects that Recker's conduct has understandably had a lasting adverse effect on his nephews, who remain worried and afraid of their uncle. (Apr. 29, 2014 Tr. at 8-10). Therefore, the 250-foot no-contact condition is reasonably related to future criminality and the statutory ends of community control.

{¶20} Implicit in Recker's arguments is the contention that the 250-foot no-contact condition is overbroad. However, courts have found sufficient relationships between conditions more broad than Recker's—for example, no contact with *any* persons under 18 years of age—and offenses similar to Recker's. *See, e.g.*, *State v. Bragg*, 8th Dist. Cuyahoga No. 88517, 2007-Ohio-3273, ¶ 2, 9, 11 (upholding the condition of community control "prohibiting contact with children" where the defendant pled guilty to three misdemeanor offenses, including sexual imposition, "that arose from sexual contact with a child victim"). Courts have also upheld conditions more restrictive on offenders than the 250-foot zone of which Recker complains. *See, e.g.*, *Keever* at ¶ 15 (upholding a 1,000-

yard no-contact zone, which forced the defendant to move out of his mother's residence, because the condition "directly related" to the defendant's "menacing behavior * * * spread among *several* women in his neighborhood" (emphasis sic)); *Lakewood v. Bretzfelder*, 8th Dist. Cuyahoga No. 98925, 2013-Ohio-4477, ¶ 43-45 (citing *Keever* and upholding a condition that the defendant not return to the condominium in which he was residing at the time he committed the offenses). Moreover, we agree with the State that a simple no-contact order would not have the same effect as the 250-foot no-contact condition because Recker is related to his victims. It is foreseeable that a simple no-contact order would allow Recker to attend "sporting events or other family events" also attended by the victims, so long as he did not have physical or verbal contact with them. (Appellee's Brief at 3).

{¶21} We disagree with Recker that the 250-foot no-contact condition "rob[s him] of the use of his property" and amounts to "a taking of that portion of the land." First, while Recker's counsel asked a "question" regarding the 250-foot no-contact condition at the sentencing hearing, Recker did not argue that the condition amounted to a taking of his property or would otherwise inhibit the use of his property. Rather, Recker expressed to the trial court that the 250-foot no-contact condition would restrict his ability to travel northbound out of his property:

- 13 -

[Recker's Counsel]: Yes, Your Honor, one question, is that the 250 feet we believe is more than 250 feet from their house to the roadway that he uses as his way of getting in and out of his property, but if they were at the far extents of their family property, then he wouldn't be able to go out on the road.

[Recker]: I won't be able to drive north out of my house.

[Recker's Counsel]: Yeah.

[Trial Court]: It's been a bond condition. Community control sanctions are specifically restricting the residence and the movement of defendant is an absolute legitimate community control sanction. I do not think that 250 feet is an unreasonable area. I don't, and I'm not going to modify that.

(Apr. 29, 2014 Tr. at 26-27).

{¶22} Recker has changed his tune on appeal, arguing that the 250-foot no-contact condition will impact his use of his *property*, as well as his use of the road. Recker could have articulated this argument to the trial court, so he cannot on

- 14 -

appeal make the argument for the first time. *See State v. Guinther*, 3d Dist. Crawford No. 3-09-09, 2010-Ohio-1263, ¶ 3. Moreover, even if we were to consider his argument, Recker is left with the record below, and the record reflects that he failed to demonstrate to the trial court precisely how the 250-foot zone would impact the use of his property. For example, Recker introduced no plats, maps, or other information concerning the distance between his property and the property on which his nephews reside.

**{¶23}** Recker's reliance on *State v. Mueller* in misplaced. In that case, Mueller was convicted by a jury of domestic violence. *State v. Mueller*, 122 Ohio App.3d 483, 484 (1st Dist.1997). As part of Mueller's sentence, the trial court ordered that he "immediately * * * sign a quitclaim deed turning his interest in the house over to" the victim, with whom he owned the house. *Id.* On appeal, Mueller argued that the trial court erred in ordering him to quitclaim the house to the victim, and the First District Court of Appeals agreed. *Id.* at 485-486. However, the First District noted that "the trial court clearly, as a condition of probation, had the power to order Mueller to vacate the house, a condition wholly appropriate in this case * * *." *Id.* at 486.

**{¶24}** The improper condition in *Mueller* is different than the 250-foot no-contact condition in this case. The trial court did not order Recker to sell his interest in his property. Most notably, the trial court did not require Recker to

- 15 -

move out of his residence, yet the First District in *Mueller* said that a condition requiring Mueller to vacate his residence *was* an appropriate condition in that case. For these reasons, Recker's reliance on *Mueller* is misplaced.

**{¶25}** For these reasons, the trial court did not abuse its discretion by imposing as a condition of community control that Recker have no contact with and stay at least 250 feet away from his nephews.

**{¶26}** Recker's first assignment of error is overruled.

### Assignment of Error No. II

**Appellant's requirement that he register as a sex offender for fifteen years is cruel and unusual punishment as defined by the Eighth Amendment to the Federal Constitution.**

**{¶27}** In his second assignment of error, Recker argues that his obligation under R.C. Chapter 2950 to register as a sex offender for 15 years amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

**{¶28}** "'The question of constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution this means in the trial court.'" *State v. Rowland*, 3d Dist. Hancock No. 5-01-28, 2002 WL 479163, *1 (Mar. 29, 2002), quoting *State v. Awan*, 22 Ohio St.3d 120, 122 (1986). *See also State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 70. "This applies to challenges to the facial constitutionality of a statute and to the constitutionality

of a statute's application." *Bagley* at ¶ 70, citing *Awan* at syllabus. "'If a party fails to object to a constitutional issue at trial, an appellate court need not consider the objection for the first time on appeal.'" *Id.*, citing *Rowland* at *1, citing *Awan* at syllabus. *See also State v. Farmer*, 2d Dist. Montgomery No. 22852, 2009-Ohio-6013, ¶ 23 (noting that the court "need not consider * * * for the first time on appeal" the defendant's constitutional arguments, including that Ohio's sex-offender registration requirements constitute cruel and unusual punishment, because the defendant "failed to object to his classification and did not raise these constitutional issues in the trial court below").

{¶29} Our review of the record in this case reveals that Recker is attempting to, on appeal, raise his arguments under his second assignment of error for the first time. While the case was pending before the trial court, Recker did not object to his classification as a Tier I sex offender, nor did he challenge the constitutionality of Ohio's sex-offender registration requirements, either on their face or as applied to him. In fact, at the change-of-plea hearing, when the trial court explained to Recker the counts against him, Recker responded that he understood that the offense of sexual imposition is a Tier I sex offense requiring a "recording period of 15 years." (Apr. 14, 2014 Tr. at 2). At the sentencing hearing, Recker told the trial court he understood his duties under R.C. Chapter 2950 after the trial court explained them to him, and he executed a "notification of

responsibilities to register as sex offender" for each count. (Apr. 29, 2014 Tr. at 7); (Doc. Nos. 31, 32). In addition, Recker's counsel said at the sentencing hearing, "[Recker] recognizes for the next 15 years he cannot be around children, and he understands that * * *. * * * [Recker] has signed a document indicating what he understands he has to do." (Apr. 29, 2014 Tr. at 17-18). Therefore, Recker waived his constitutional arguments, and, under *Awan*, we decline to address them. *See Bagley* at ¶ 71; *Rowland* at *1.

{¶30} Recker's second assignment of error is overruled.

{¶31} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**