DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Fulton County Court of Common Pleas that found defendant-appellant, Robert D. Miller, in violation of the terms of his community control and ordered Miller to serve a portion of his original prison sentence.
 {¶ 2} On September 15, 2005, Miller entered a plea of guilty to one count of conspiracy to commit aggravated murder, a first degree felony. Between December 1, 2003 and January 9, 2004, Miller had actively conspired with and attempted to contract with another individual to murder Miller's father. In furtherance of that conspiracy, Miller had paid the other individual $1,000. Miller had a history of mental illness and so, prior to his plea, was evaluated to determine his competence. Although he was found competent to stand trial, he was also found to have had a "history of psychiatric hospitalizations and outpatient mental health treatment for attempted suicide and depression." Upon further evaluation, Miller was diagnosed as suffering from major depression, post traumatic stress disorder ("PTSD"), and obsessive-compulsive personality disorder with avoidant and paranoid features. In exchange for his guilty plea, the state agreed to dismiss three other related counts against Miller and to recommend that Miller be placed on community control with the requirement that he successfully complete the SEARCH program at the Northwest Community Corrections Center in Bowling Green, Ohio. As the trial court noted in its judgment entry revoking Miller's community control, "[t]he SEARCH Program presents a `confrontational therapeutic community' approach to corrections, with intense confrontational group sessions and individual counseling being part of its rigorous format."
 {¶ 3} After reviewing the presentence investigation report, the lower court on December 2, 2004, imposed sentence. The court sentenced Miller to five years of community control with the special condition that he complete the SEARCH program and any and all aftercare recommended by the counseling staff and his probation officer. The court then specified that "[i]f the Defendant is denied entrance into the SEARCH Program, or if Defendant is discharged from said program as '`nsuccessful,' the Defendant will then be brought back to court for further hearings." The court reserved a prison term of five years and ordered that "[v]iolation of this sentence may lead to a longer or more restrictive sanction for the Defendant, up to and including the imposition and serving of the balance of the five (5) year term of State incarceration reserved above."
 {¶ 4} Miller was evaluated and admitted into the SEARCH program on December 21, 2004. From the beginning, Miller was resistant to treatment and repeatedly expressed his desire to the staff and other residents that he wanted to leave the program. On January 25, 2005, he was discharged from the program as unsuccessful. On January 27, 2005, the state filed a motion to revoke Miller's community control. The case proceeded to a hearing at which a number of SEARCH staff members as well as psychologists and mental health providers testified. On May 11, 2005, the lower court issued a judgment entry finding that Miller had violated the terms of his community control and revoking that community control. In evaluating the evidence, the court made the following findings of fact.
 {¶ 5} "10. Defendant did not do well at SEARCH. There were numerous attempts by SEARCH personnel and staff to `work' with Defendant, to include numerous meetings and conferences held by the Defendant with Mr. Grant Chaffee, Community Resource Specialist, Ms. Nicolle Schroeder, BA, RC, Defendant's Case Specialist and Licensed Clinical Counselor, Associate Professor Andrew Elliott, Secure Care Mental Health Provider and Psychologist, all in consultation with Dr. Mercado, M.D., Staff Psychiatrist, Ms. Sarah Hilbert, MSW, Case Services Co-ordinator, Mr. Rodney Fizer, MSW, MS, ACSW, LISW, Program Director, Ms. Bonnie Bailey, Case Specialist, and Deputy-Director Valerie Spears, MSW.
 {¶ 6} "11. Defendant failed to favorably respond to the requirements of SEARCH, as he remained focused on `getting out' of the program, on the `unfairness' of his situation, on his need to get back to his `farming operation,' and on an alleged `conspiracy' and `coverup' by Fulton County Officials, in conjunction with certain activities perpetrated by his father. (As a parenthetical there does appear to be some support for some of these particular concerns as expressed by the Defendant, although they clearly fall far short of any `conspiracy' or `coverup;' and in any event, they do not constitute, in any way, any justifications or excuse for Defendant's actions of which he stands convicted.) After a number of `write-ups,' and much documentation, Defendant was Discharged from SEARCH as `Unsuccessful' on January 25, 2005.
 {¶ 7} "12. Each of the SEARCH personnel who testified at hearing testified that, in his or her opinion, Defendant did have the ability to conform to SEARCH Program requirements, but that he had willfully chosen not to do so.
 {¶ 8} "13. Dr. Wayne Graves testified at hearing that, in his opinion, Defendant's depression became so great that at the time of his discharge he did not have the ability to conform to SEARCH Program requirements.
 {¶ 9} "14. Upon learning of his discharge, Defendant attempted suicide, and he was hospitalized and treated for serious depression for approximately one week, before being transported back to C.C.N.O."
 {¶ 10} The court further expressly found the testimony of the SEARCH personnel to be more credible and persuasive than the testimony or arguments opposed to it. The court then found that the state had met its burden of proof that Miller had violated the terms of his community control.
 {¶ 11} On June 8, 2005, the lower court, after a sentencing hearing, issued a judgment entry re-imposing on Miller a four year term of incarceration, with credit for time served in the SEARCH program and at CCNO. From that judgment, Miller now appeals raising the following assignment of error:
 {¶ 12} "I. The trial court abused its discretion in revoking Miller's community control because the state failed to offer substantial proof, using competent and credible evidence, that Miller willfully and intentionally violated the terms of his community control."
 {¶ 13} In his sole assignment of error, Miller asserts that the state failed to prove that he intentionally or willfully breached the terms of his community control. In a probation revocation proceeding, the state must present substantial evidence that the defendant violated the terms of his probation.State v. Hylton (1991), 75 Ohio App.3d 778, 782; State v.Cowles (June 16, 1995), 6th Dist. No. F-94-029. Upon review, an appellate court will not reverse the trial court's decision to revoke probation absent an abuse of discretion. State v. Bland
(Feb. 21, 1997), 6th Dist. No. H-96-031. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's action was arbitrary, unreasonable or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. These same standards apply to the revocation of a community control sanction. State v. Weaver (2001),141 Ohio App.3d 512.
 {¶ 14} Miller contends that because of his severe mental health problems, and because the SEARCH program did not have the personnel to adequately handle his mental conditions or his medications, he did not realistically have an opportunity to succeed and, therefore, the trial court abused it discretion in finding that he willfully failed to comply with the terms of his community control. In support, Miller cites the case of State v.Bleasdale (1990), 69 Ohio App.3d 68. In Bleasdale, the defendant was given a suspended sentence and was placed on probation on the condition that he be accepted by and successfully complete a specific drug program. The defendant was ultimately terminated from the program after he was diagnosed as suffering from several mental disorders and the staff determined that it was not equipped to deal with the mental problems that the defendant exhibited. After a probable cause hearing, the trial court revoked the defendant's probation and reinstated his sentence of confinement. On appeal, the Eleventh District Court of Appeals determined that the trial court had abused its discretion in revoking the defendant's probation because the defendant had not willfully or intentionally violated the conditions of his probation. Rather, the court stated, the defendant had been cooperating with the program but was terminated "due to the program's inability to properly minister his case." Id. at 72.
 {¶ 15} Appellant asserts that his situation is equal to that of the defendant in Bleasdale, and that he did not willfully or intentionally violate the conditions of his community control. The state, however, in a community control revocation proceeding, is only required to present substantial evidence that the defendant violated the terms of his community control. "The privilege of probation [or community control] rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the privilege." State v. Bell (1990), 66 Ohio App.3d 52, 57. There is no requirement that the state prove willfulness before the court can revoke a defendant's community control. State v.Wolfson, 4th Dist. No. 03CA25, 2004-Ohio-2750, at ¶ 12; Statev. Stockdale (Sept. 26, 1997), 11th Dist. No. 96-L-172. Indeed, the court below did not find that Miller's violation was "willful."
 {¶ 16} The court in the proceeding below heard extensive testimony regarding Miller's mental condition and his actions while in the SEARCH program. Several witnesses testified that other residents of the SEARCH program have significant mental health issues and they believed the SEARCH program could deal with Miller's issues if he would just give it a chance. From the beginning, however, Miller resisted the program. In finding that the state had met its burden of proof that Miller violated the terms of his community control, the court stated:
 {¶ 17} "The Court is not unsympathetic with Mr. Miller's plight. He clearly did have a rough upbringing, he clearly does manifest some significant mental health issues, and in some respects it does appear to be rather unfair that the State of Ohio does not have a more compatible lock down facility whereby Defendant's unique health needs and circumstances could be addressed.
 {¶ 18} "This case, however, is more than just a matter of concern about Mr. Miller's mental health problems, his circumstances, and his rehabilitation. It is also about maintaining societal standards, of maintaining a proportionality and equality of sentencing, and of maintaining the integrity of the criminal justice system, under which we all must live.
 {¶ 19} "Mr. Miller's actions went a long way towards accomplishing a murder, and that of his own father. He committed a serious Felony, for which society calls for the imposition of a serious punishment. Attempted Murder calls for a term of incarceration of up to 10 years. It further carries a presumption of prison time. Defendant got a `reserved term of 5 years,' and an opportunity to work his way out of any prison time. It is certainly unfortunate that Defendant was not able to complete his SEARCH Program commitment, but even with a revocation, Defendant will still have avoided the full rigor of a long prison term by half.
 {¶ 20} "Defendant cannot complain that society did not try to work with him, nor that it did not give him a chance. It did. Unfortunately for Defendant, the State, and its citizens, have run out of viable alternatives. Moreover, the Court is convinced, by a clear and convincing standard, that the testimony of the SEARCH personnel who testified in this case, is entitled to receive more credibility and persuasive impact than any of the testimony or arguments that were opposed to it. In the balancing of the rights of an individual against the rights of the citizens of a community, there are times when the preponderance lies with the citizens."
 {¶ 21} In light of this passage from the trial court's judgment entry revoking Miller's community control, we cannot say that the lower court abused its discretion in ruling as it did. The state was not required to prove that Miller's violation of his community control was willful and the court thoroughly evaluated Miller's situation and the evidence presented at the hearing. Accordingly, the sole assignment of error is not well-taken.
 {¶ 22} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair hearing and the judgment of the Fulton County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Pietrykowski, J., Singer, P.J., Skow, J., concur.