[Cite as *State v. Crosby*, 2020-Ohio-3306.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

       Appellee

v.

Keith E. Crosby

       Appellant

Court of Appeals Nos. L-19-1160
L-19-1186

Trial Court Nos. CRB-18-01668
CRB-18-01687
CRB-19-01195

**<u>DECISION AND JUDGMENT</u>**

Decided: June 12, 2020

* * * * *

David Toska, Chief Prosecutor, and Jimmie Jones, Assistant
Prosecutor, for appellee.

Matthew O. Hutchinson, for appellant.

* * * * *

**ZMUDA, P.J.**

{¶ 1} This consolidated appeal challenges the judgment of the Toledo

Municipal Court, finding appellant, Keith Crosby, violated his probation in case Nos.

CRB-18-01668, CRB-18-01687, and CRB-19-01195. The trial court imposed a one-day

jail sentence in case No. CRB-18-01668, extended appellant's term of probation in

case Nos. CRB-18-01668 and CRB-18-01687, and issued a no contact order in CRB-19-01195. For the reasons that follow, we affirm, in part, and reverse and vacate, in part.

## I. Facts and Procedural Background

{¶ 2} The underlying events in this consolidated matter relate to a divorce and child custody case, filed days before the initial incidents. Although the record on appeal does not include any record of the divorce and custody proceedings, the parties acknowledge that Ms. Crosby filed for divorce and sought a domestic violence protection order, and the domestic relations court denied her request for a protection order. Days later, the couple had an altercation in the marital home, resulting in appellant's arrest.

{¶ 3} The Toledo Municipal Court issued a temporary protection order as part of subsequent criminal proceedings. After resolution of the criminal matters through a plea to lesser offenses, the trial court withdrew the temporary protection order in each case,[1] and imposed a no-contact order in two of the three cases. The criminal proceedings are summarized as follows:

### CRB-18-01668

{¶ 4} On February 11, 2018, police responded to a home at 824 Sibley, in Toledo, Ohio, to investigate a report of an assault. Ms. Crosby reported that appellant struck her in the face with the back of his hand during an argument. Police arrested appellant, and

---

[1] Pursuant to R.C. 2919.26(E)(2)(a), a temporary protection order terminates upon "disposition, by the court that issued the order[.]"

2.

he was charged with domestic violence, in violation of R.C. 2919.25(A) and assault in violation of R.C. 2903.13(A), in case No. CRB-18-01668. Appellant entered a plea of not guilty the next day, and was released on his own recognizance. Appellant consented to a temporary protection order, and the trial court ordered him to have no contact with Ms. Crosby. The matter continued until the scheduled trial date, July 24, 2018.

{¶ 5} On the date of trial, appellant withdrew his not guilty plea to the domestic violence charge, and entered a plea of no contest to an amended charge of disorderly conduct, in violation of R.C. 2917.11, a misdemeanor of the fourth degree, with the remaining assault charge addressed "off docket." The trial court accepted the plea, found appellant guilty, and imposed a 30-day jail sentence, with 30 days suspended. The trial court also withdrew the protection order, and placed Crosby on active probation for a period of one year, with conditions of probation including domestic violence classes and no contact with Ms. Crosby, subject to modification by the domestic relations court in the divorce proceedings. Appellant did not appeal his conviction in this case.

### CRB-18-01687

{¶ 6} On February 12, 2018, Ms. Crosby filed a complaint on behalf of the couple's minor child, alleging appellant grabbed the child by her arm and flung her around by the arm, causing injury, in an attempt to prevent the child from calling 911 to report the incident between appellant and Ms. Crosby, resulting in charges in case No. CRB-18-01668. A warrant issued in case No. CRB-18-01687, with appellant charged with domestic violence in violation of R.C. 2912.25(A) and assault in violation of R.C.

3.

2903.13(A), concerning his minor child. Appellant appeared before the trial court on February 13, 2018, and entered a not guilty plea. The trial court released appellant on his own recognizance. Appellant consented to a temporary protection order for his daughter, the victim. The trial court consolidated the case with case No. CRB-18-01668.

{¶ 7} On July 24, 2018, the date of trial, appellant withdrew his previous plea to the domestic violence charge, and entered a plea of no contest to the amended charge of disorderly conduct, in violation of R.C. 2917.11, a misdemeanor of the fourth degree, with the remaining assault charge addressed "off docket." The trial court accepted the plea, found appellant guilty, imposed a 30-day jail sentence, with all 30 days suspended, and withdrew the protection order. The trial court placed appellant on one year of active probation, with a single condition imposed, requiring appellant to complete domestic violence classes. Appellant did not appeal his conviction in this case.

### CRB-19-01195

{¶ 8} Based on events during the pendency of case Nos. CRB-18-01668 and CRB-18-01687, a complaint was filed on January 29, 2019, in case No. CRB-19-01195, alleging three counts of violating a protection order entered in domestic relations case No. DV 2018-0083, effective February 16, 2018 to February 16, 2019, as well as violation of a temporary protection order issued by the trial court in case No.

4.

CRB-18-01668.[2]  The victim, Ms. Crosby, alleged that appellant sent several text messages on or about June 15 and June 16, 2018, and attended a high school reunion on June 16, 2018, where the victim was already in attendance, coming to within 35 feet of the victim.[3]  On March 13, 2019, the matter was tried to the court and the trial court found appellant guilty.

{¶ 9} The trial court imposed a 180-day jail sentence, suspended all 180 days, and placed appellant on inactive probation for one year.  Appellant was ordered to have no contact with Ms. Crosby, subject to modification by the domestic relations court in the divorce proceedings.  Appellant did not appeal his conviction in this case.

**Probation Violation Hearing**

{¶ 10} On January 4, 2019, the trial court scheduled the matter for a probation violation hearing in case Nos. CRB-18-01668 and CRB-18-01687.  On June 3, 2019, the trial court scheduled the matter for a probation violation hearing in case No. CRB-19-01195.  On July 29, 2019, the trial court held a hearing as to all three cases.

{¶ 11} At hearing, appellee, the city of Toledo, presented the testimony of Ms. Crosby.   Ms. Crosby acknowledged that there was no protection order through the domestic relations court, and the divorce and custody case remained pending.  She

---

[2] Ms. Crosby testified at the probation violation hearing that the domestic court actually denied her request for a domestic violence protection order.

[3] In case Nos. CRB-18-01668 and CRB-18-01687, the trial court scheduled a probation violation hearing, which was continued repeatedly until hearing was held for all three cases, on July 29, 2019.

5.

indicated her only protection was a no-contact order, imposed as a term of appellant's probation, and she believed it extended to the couple's daughter as well. Ms. Crosby testified that appellant came to the marital home twice while she was also present, and based on video surveillance, he had been there on several other occasions.

{¶ 12} Ms. Crosby testified regarding the two incidents when she was present at the home. The first time, she was having movie night with her daughter, and witnessed appellant drive up and stop in her driveway around 11:00 p.m. The second time, she witnessed appellant pull into her driveway around 1:00 a.m., and her adult son went outside to confront appellant while she called police. Additionally, Ms. Crosby referenced video her children recorded, showing appellant tamper with a surveillance camera, move toys around in the yard, and move about the property.

{¶ 13} Ms. Crosby also testified regarding an incident at an event for DeVilbiss graduates, where appellant approached her, spoke to her, and got into an argument with her adult son, rather than leave once he discovered she was present. She acknowledged that, as a result of the altercation with her son, appellant was granted a civil stalking protection order against her son.

{¶ 14} Appellant also testified. He acknowledged the no contact order, but believed it pertained to Ms. Crosby, and not the marital home. He believed he had property in the garage, and on one occasion retrieved some property after requesting a police escort. Ms. Crosby called the police, too, and additional units arrived at the house. Appellant testified that he showed police his "paperwork" and his license, and police told

6.

him to "make sure if you ever come to the house and she's here, leave or put yourself on camera showing what you're doing as you're leaving" and to have no contact with Ms. Crosby.

{¶ 15} Appellant admitted he attended the same DeVilbiss event as Ms. Crosby, but disputed her version of events. He testified that he did not know she was present until her adult son approached him, blew in his face, and harassed him. According to appellant, between 600 and 700 people attended the event, but after his encounter with the son, he noticed Ms. Crosby across the hall and did not leave the event. Instead, appellant testified that he approached a deputy sheriff, working the event, and he reported the divorce and no contact order, as well as the harassment from Ms. Crosby's son. According to appellant, the deputy told him to "just walk away," and report "any more problems." After the harassment continued, appellant left and "went straight to the police station and reported it." Appellant received a civil stalking protection order against Ms. Crosby's son, based, in part, on threats made at the event.

{¶ 16} Appellant also admitted to going to the marital home, believing the no contact order only applied to Ms. Crosby. He testified that he never attempted to enter the house or interact with Ms. Crosby, but did intend to enter the garage. As to Ms. Crosby's claim that he moved things around the yard, appellant testified that he cleaned up around the property, and took toys belonging to his grandchildren. Appellant opined that Ms. Crosby's claims of violation of his no-contact order were more about the fact she

7.

was permitting her adult son to reside in the home, contrary to an agreement reached in the parties' divorce proceedings.

**Sanction**

{¶ 17} After considering the testimony and argument of counsel,[4] the trial court found as follows:

> I find the [appellant] in violation of his probation. I ordered a no contact order. You repeatedly go over to the house. You don't know whether or not she's there or not there. That doesn't seem to bother you. You were seen on videotape kind of walking around the house. Again, you don't know if she's there or not there. You go to DeVilbiss, you know she's there, you stay there. I don't know what I have to do.

The trial court asked appellant and his counsel to address any mitigating circumstances, prior to imposing its sanction. Appellant's counsel explained the circumstances of the divorce, and the lack of any order preventing appellant's access to the marital home or his property stored there. Appellant also addressed the trial court, arguing his conduct was not an attempt to contact Ms. Crosby.

{¶ 18} The trial court also heard from Ms. Crosby, who indicated appellant continues to appear on her street, and is the reason their minor child is on medication for

---

[4] The trial court indicated the city and appellant proffered exhibits in its written docket entry after hearing. However, the hearing transcript does not include admission of any exhibits, and the record on appeal does not include exhibits from the hearing.

8.

anxiety attacks. Ms. Crosby indicated their child is afraid to ride her bike in the neighborhood because she fears appellant might kidnap her.

{¶ 19} After considering the statements in mitigation, and the statements of the victim, the trial court imposed a one-day sentence in CCNO, and extended appellant's probation for one year from the date of hearing. Additionally, the trial court ordered Crosby to remain more than 1,000 feet from Ms. Crosby's person, residence, or work. In reciting its finding and sanction, the trial court did not identify the individual cases.

{¶ 20} In journalizing the finding and sanction, the trial court imposed the one-day jail term in case No. CRB-18-01668, extended appellant's probation in case Nos. CRB-18-016688 and CRB-18-01687, and ordered appellant to have no contact with Ms. Crosby in case Nos. CRB-18-01668, CRB-18-01687, and CRB-19-01195. The no contact order pertaining to Ms. Crosby was a new term of appellant's probation in case No. CRB-18-01687, as Ms. Crosby was not the complaining victim in that case.

## II. Assignments of Error

{¶ 21} Appellant now challenges the Toledo Municipal Court's judgment on appeal, asserting the following assignments of error.

Assignment of Error No. 1: The trial court erred when it found [appellant] had violated his probation in case number 01687 for having contact with Donnita Crosby when "no contact" was not a condition of his probation as to that case number.

Assignment of Error No. 2: The trial court erred when it found [appellant] had violated his probation in case number 01195, which had made an exception for contact "as allowed" when there was no court order prohibiting [appellant] from being at the property.

Assignment of Error No. 3: The trial court erred by finding [appellant] violated the "no contact" condition of his probation when he had not communicated with Ms. Crosby.

### III. Analysis

{¶ 22} Appellant appeals the findings of the trial court regarding the probation violation in each case, arguing a lack of evidence of contact between appellant and Ms. Crosby, and a lack of "no-contact" terms as part of his probation in case No. CRB-18-01687. We address his assignments of error out of order, addressing his second and third assignments of error first, as each challenge the trial court's findings regarding a "no-contact" order.

{¶ 23} We review a trial court's findings regarding a probation violation for an abuse of discretion. *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675, ¶ 19 (6th Dist.); *see also State v. Pavlich*, 6th Dist. Erie No. E-10-011, 2011-Ohio-802, ¶ 24 (citation omitted.). An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 6 Ohio St.2d 217, 219, 450 N.E.2d 1140 (1983).

10.

**{¶ 24}** R.C. 2929.25 governs community control sanctions for misdemeanor offenses, and provides for probation as an available community control sanction at sentencing. *State v. Recker*, 3d Dist. Putnam Nos. 12-14-03, 12-14-04, 2014-Ohio-4993; ¶ 9, citing *State v. Mack*, 6th Dist. Lucas No. L-11-1065, 2012-Ohio-2960, ¶ 1, fn. 1. Pursuant to R.C. 2929.25(B), "the sentencing court retains jurisdiction over the offender and the period of community control for the duration of the period of community control[,]" and may "on the court's own motion" modify the terms previously imposed, substitute terms, or impose an additional term.

**{¶ 25}** Here, the court proceeded to hearing on allegations of numerous probation violations. A probation violation hearing is not the equivalent of a criminal trial. *Ohly* at ¶ 18, citing *State v. Bland*, 6th Dist. No. H-96-031, 1997 WL 77679 (Feb. 21, 1997). To support a finding that appellant violated the terms of his probation, "the allegations need not be proven beyond a reasonable doubt but, rather, must be based only upon 'evidence of a substantial nature showing that revocation is justified.'" *Ohly* at ¶ 18, quoting *State v. Cowles*, 6th Dist. F-94-029, 1995 WL 358536 (June 16, 1995).

**{¶ 26}** Appellant did not dispute three of the alleged incidents. He admitted he was present at the marital home when Ms. Crosby was also present on two occasions, and he admitted he was present at the DeVilbiss event with Ms. Crosby, and did not leave once he became aware of her presence. Rather than dispute these incidents, appellant argues that his presence near Ms. Crosby did not meet the definition of "contact,"

11.

necessary for a finding he violated the no contact condition of the trial court's community control sentence.

{¶ 27} Appellant defines "contact" as requiring communication, citing to the definition of the term as it pertains to de minimis contact in adoption proceedings. *See In re Adoption of A.L.E.*, 4th Dist. Meigs No. 16CA10, 2017-Ohio-256, ¶ 17, quoting *Merriam-Webster's Collegiate Dictionary* 268 (11th Ed.2005) (additional citation omitted) (defining "contact" for purposes of determining contact with the child as "an establishing of communication with someone or an observing or receiving of a significant signal from a person or object."). Courts construe the meaning of "contact" differently in addressing the no-contact orders issued in criminal proceedings.

{¶ 28} In considering whether a probationer has violated a no-contact order, "contact" has been defined as "a state or condition of touching; touch; proximity or association; connection." *State v. Wells*, 4th Dist. Athens No. 06CA30, 2007-Ohio-906, ¶ 11, citing *Defiance v. Mohr*, 3d Dist. Defiance App. Nos. 4-90-5 and 4-90-6, 1991 WL 104348 (June 12, 1991). Based on this definition, courts have found a violation based on mere proximity. *See, e.g., Wells* at ¶ 11 (driving by a victim's campsite, within close proximity, sufficient to support probation violation of the no-contact order). Courts have also found a violation based on encounters at crowded venues. *See, e.g., State v. Dunaway*, 1st Dist. Hamilton No. C-010518, 2002-Ohio-3290, ¶ 21 (violation supported by evidence of proximity to a victim at a crowded amusement park).

12.

{¶ 29} Clearly, "contact" could include more than physical contact or overt communication. In this case, appellant admitted to close proximity to Ms. Crosby on three occasions. The trial court considered the evidence, and determined that appellant's conduct while Ms. Crosby was present inside the home, and his conduct in remaining at the DeVilbiss event despite knowledge that Ms. Crosby was also present, constituted contact, in violation of the terms of appellant's probation.

{¶ 30} In the alternative, appellant argues that he was permitted to enter upon the marital property, and therefore could not violate the no-contact order by doing so. In support, he argues that the trial court's no-contact order permitted modification by the domestic relations court, and compares the trial court's prior temporary protection order, containing a prohibition from entering upon the premises, with the no-contact term of his probation. Appellant contends that the domestic relations court denied Ms. Crosby's requested protection order because a temporary protection order had already issued in the criminal proceedings, and because the domestic relations court did not modify the no-contact order to include the premises, the prohibition against entering the premises or being in the same place as Ms. Crosby expired.

{¶ 31} Appellant argues that he could enter the property even if Ms. Crosby were present in the home, but his own testimony at hearing contradicts this belief. At hearing, appellant acknowledged he initially called for a police escort to retrieve belongings from the property. Appellant testified that once the officers learned of the no-contact order, the officers instructed him "to make sure if you ever come to the house and she's here, leave

13.

or put yourself on camera showing what you're doing as you're leaving. Have no contact and just leave." The evidence at the hearing indicated appellant parked in Ms. Crosby's driveway on two separate occasions, late at night, with no explanation for the late-night visits, and no evidence he "just left" when he encountered Ms. Crosby at home.

{¶ 32} Considering the record, we find no abuse of discretion by the trial court in determining appellant had contact with Ms. Crosby, in violation of the no-contact order in case Nos. CRB-18-01668 and CRB-19-01195. Accordingly, we find appellant's second and third assignments of error not well-taken.

{¶ 33} In appellant's first assignment of error, he argues that the "no-contact" provision was not included as a condition of his probation in case No. CRB-18-01687, the case in which the couple's daughter was the victim. In response, the city argues that the term was "implied" as part of his probation, based on its inclusion in the other two cases.

{¶ 34} "The privilege of probation [or community control] rests upon the probationer's compliance with the probation conditions and any violation of *those conditions* may properly be used to revoke the privilege." *State v. Miller*, 6th Dist. Fulton No. F-05-016, 2006-Ohio-4810, ¶ 15, quoting *State v. Bell*, 66 Ohio App.3d 52, 57, 583 N.E.2d 414 (5th Dist.1990) (emphasis added). In this case, the "no-contact" condition was not included in the sentencing entry. The city does not explain how this term could be understood as an implied condition, either, considering Ms. Crosby was not the victim in that case.

14.

{¶ 35} Here, the trial court found appellant violated a non-existent condition of his probation as it related to case No. CRB-18-01687. Courts do not generally enforce unwritten, unspecified conditions in proceedings to determine a probation violation. *See, e.g., Village of Swanton v. Barker*, 6th Dist. Fulton No. F-00-003, 2000 WL 1545041 (Oct. 20, 2000), *2 ("because appellant's relationship with her probation officer and the court was not a term or condition of her probation, the court could not revoke her probation on that ground."). Accordingly, we agree with appellant that finding him in violation of a "no-contact" provision, never imposed, constitutes error.

{¶ 36} We note, however, that appellant has not challenged the trial court's imposition of additional community control terms in case No. CRB-18-01687. As previously noted, R.C. 2929.25(B) grants the trial court continuing jurisdiction to modify or impose additional conditions as part of community control. Continuing jurisdiction may be exercised "in the court's sole discretion and as the circumstances warrant[.]" R.C. 2929.25(B). Thus, "[p]ursuant to R.C. 2929.25(B), the court has the authority to modify the conditions of community control as long as the duration of community control has not expired." *State v. Rogers*, 8th Dist. Cuyahoga No. 98779, 2013-Ohio-588, ¶ 13.

{¶ 37} Accordingly, while we find the trial court erred in entering a finding that appellant violated the terms of his probation in case No. CRB-18-01687, to the extent that the trial court modified and extended the terms of probation in that case, we find no challenge raised to these terms. Therefore, as to the specific error raised, we find appellant's first assignment of error well-taken. The trial court's finding of a probation

15.

violation as to case No. CRB-18-01687, therefore, must be vacated. The addition of a no-contact order and extension of the term of probation, however, has not been challenged, and falls within the trial court's continuing jurisdiction over community control.

## IV. Conclusion

{¶ 38} Based on the forgoing, we vacate the finding of a violation as to CRB-18-01687 as entered in error, but as the modification to the terms of community control in that case fell within the trial court's continuing jurisdiction, we otherwise affirm the judgment of the Toledo Municipal Court as to the judgment, imposing sanctions for violation of conditions of appellant's community control. The OR bond granted by the court on August 2, 2019, is accordingly vacated. Pursuant to App.R. 24, the costs of this appeal are to be divided equally between the parties.

Judgment affirmed, in part, and
reversed and vacated, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.             _____

                                                                      JUDGE

Thomas J. Osowik, J. _____

                                                _____

Gene A. Zmuda, P.J.                          JUDGE
CONCUR.

                                                _____

                                                   JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.